**TABOR v. UNITED STATES (two cases).**
**Nos. 5398, 5399.**

Circuit Court of Appeals, Fourth Circuit.

Nov. 5, 1945.

Simon E. Sobeloff, of Baltimore, Md. (Paul Berman, of Baltimore, Md., on the brief), for appellant.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for appellee.

Before SOPER, DOBIE and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

Daniel Tabor, defendant in the District Court of the United States for the District of Maryland, was convicted in two cases, that were tried together, one for conspiring to evade military service under the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 311, and the other for making false statements as to fitness for service under the provisions of that Act. He was sentenced to imprisonment for a term of two years in the first case and five years in the second, the sentences to run concurrently.

Three points are raised on this appeal. I. That the trial court erred in refusing to direct the jury to return a verdict of not guilty, on each indictment, because there was no evidence in either of the cases legally sufficient to establish the corpus delicti other than through the alleged extrajudicial confession and admission of the alleged crime.

II. That the trial court erred in admitting in evidence the defendant's extrajudicial confession.

III. That the trial court erred in admitting the evidence of Griffith, one of the Government witnesses.

Appellant, here referred to as the defendant, was registered for the draft on October 16, 1940, with Local Board No. 16, Baltimore City.

On July 2, 1941, he filed his questionnaire with the said Board and at the same time he filed an affidavit stating that he operated a grocery store at 332 N. Stricker Street which was owned by his father-in-law; that his father-in-law and wife were entirely dependent upon him; that his father-in-law was totally incapacitated and had recently undergone a major operation for hernia and was unable to work; that although the store remained in his father-in-law's name for the purpose of business credit, defendant stated that he in effect ran and operated it and asked for classification in Class 3-A, and on July 12, 1941, defendant was classified 3-A by the Local Board.

On October 1, 1942, defendant notified the Board that his wife had given birth to a child on September 15, 1942.

On July 16, 1943, he filed with the Local Board an affidavit of family status dependency. To this he attached a letter in which he said: "I do not work for exact salary. I run grocery store for my father-in-law who is ill and is unable to work, and in return for my work, I take all my expense from the store for the support of my family."

On July 29, 1943, defendant was placed in Class 1.

On July 31, 1943, he filed with the Board an affidavit of Dr. Louis J. Glass, in which he stated that Mrs. Hannah Tabor, the wife of the registrant, was under his care "because of weakness and nervous condition following her pregnancy. It would work undue hardship and suffering on Mrs. Tabor if she were forced to be without the help and presence of her husband, since she cannot do very much in manual work."

On August 10, 1943, defendant was classified Class 1-A, and on the same day defendant filed with the Local Board an affidavit of his father-in-law in which his father-in-law set out his poor physical condition and stated: "If my son-in-law is inducted into the armed services, I would be forced to suffer severe hardships, since I will be without any means of livelihood."

On August 18, 1943, defendant filed with the Local Board a letter from Dr. B. S. Abeshouse stating that he was treating Mr. Samuel Laden, father-in-law of the defendant and makes this statement: "He is, therefore, wholly dependent upon his son-in-law, Mr. Daniel Tabor, who is now conducting Mr. Laden's business."

On October 14, 1943, an appeal was taken from the classification 1-A and the reason assigned for the appeal was "Registrant claims illness of wife and her family."

On October 19, 1945, the Appeal Board confirmed classification of defendant in Class 1-A, by a vote of 3–0.

On October 23, 1943, defendant was sent an order to report for induction on November 8, 1943.

On October 25, 1943, defendant requested the State Director of Selective Service to review his case, to which he attached a letter stating that it was a request for a deferment from induction for at least sixty days so that he could dispose of the merchandise on hand at his place of business. He says the following: "If you will recall, I own and operate a grocery and meat store at 332 North Stricker Street, and have been operating my business for the past six years. Both my father-in-law and mother-in-law are in ill health, my child is thirteen months old, and my wife is unable to work because of her health." That request was not approved by the State Director.

On November 8, 1943, defendant reported for induction and went through his physical examination, at which time he told the doctor only that he had a pain across his left eye. He was accepted for general service in the Army only.

At the trial the only evidence offered by the Government as to Tabor's actions was in the form of a confession made by him in which he stated that before leaving the Armory he talked with Chester T. Ruby, who was a Chief Petty Officer of the Navy in charge of the enlisted personnel at the Induction Station. He was introduced to Ruby by a soldier whose identity was not disclosed at the trial. Ruby advised the defendant that he could get him another physical examination and told him to play up and exaggerate his ailments when talking to the psychiatrists; to tell them he had crying spells; he did not like crowds; did not like to be around too many people. Ruby succeeded in having him re-examined

by the psychiatrists, at which time the defendant was rejected and placed in Class 4-F. Work Sheet from the Induction Station indicated that he was rejected for severe psychoneurosis. There was also noted on the Work Sheet—"history of confused spells, pains in the head, no crowds, fears, wife does the meat cutting, and so forth, crying spells, feels he wants to leave home and get away from every one at times, suicidal thoughts." The examining psychiatrist testified that what he had indicated on the Work Sheet was that the defendant had told him. No evidence was offered as to the facts detailed other than the confession of the defendant.

The circumstances surrounding the confession were as follows:

On June 5, 1944, defendant, at the offices of the Federal Bureau of Investigation in Baltimore, made a full confession admitting that he gave false information to the examining psychiatrist at the Induction Station, on November 8, 1943, and also that Chester Ruby had coached him as to what information he should give in order to be rejected. After giving this statement at the FBI office, defendant was driven to his home by agents of the FBI and in the car, after they had left the FBI office, defendant said: "I always got along well with people, and did pretty well in life. I know this thing that I did is a pretty serious thing, and it is a serious charge, not just like any false charge." "I am sorry that I made all those false statements to the psychiatrist, but I was just so set on staying out of the army, because of those reasons that I told you upstairs. I suppose those fellows have the same problem I have but after I finished the first examination, I was just completely upset, finding out that I had passed, and that is why I started to try to make arrangements to try to get out."

About ten days thereafter, two agents of the Federal Bureau of Investigation called at defendant's store, at which time, defendant told the agents: "Look, that day you came out for me, you didn't have any warrant or anything. I didn't have to go to the FBI offices. When I was down there, I didn't have to give you that statement, but I did, and everything in it is true. That is all there is to it and no money passed."

On June 19, 1944, the date on which defendant was taken into custody by agents of the FBI, he reaffirmed the statement that he had given to the FBI and said it was the truth.

The main question to be considered on this appeal is whether there was sufficient independent evidence of the corpus delicti other than through the alleged extrajudicial confession and admissions of the defendant. The rule on this point varies somewhat but the great weight of authority is to the effect that there must be some independent evidence of the corpus delicti. Here in the case against the defendant, Tabor, alone, the corpus delicti is the falsity of the statements made by him before the examining board and affidavits filed by him before that board, these in no way constitute independent evidence aside from the confession that these statements were false.

The only evidence relied upon by the Government was the testimony of the physicians who examined the defendant when he was before the board. The evidence of these physicians as to statements made by Tabor are not evidence of their falsity and do not corroborate the confession.

It is also urged on behalf of the Government that the fact that he did not state to his family physician that he had the diseases or symptoms of diseases that he stated to the board he had was proof of the falsity of his statements. This again constitutes no independent evidence of the falsity of his statements.

The necessity for independent corroboration of a confession, of the character of the one here or as to the admissions made after the crime, is clearly recognized by the Supreme Court of the United States in the case of Warszower v. United States, 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876.

A full discussion of the question and a review of a number of decisions will be found in Forte v. United States, 68 App. D.C. 111, 94 F.2d 236, 127 A.L.R. 1120. See United States v. Kertess, 2 Cir., 139 F.2d 923; Pines v. United States, 8 Cir., 123 F.2d 825; Gros v. United States, 9 Cir., 138 F.2d 261.

This court also had occasion to discuss this question in Jordan v. United States, 4 Cir., 60 F.2d 4, in an opinion written by Soper, Judge.

In summary, it may be said that the rule in this country, in all federal courts which have considered the question, has

universally been that an extrajudicial confession will not be admitted unless corroborated by other evidence. The cases differ widely as to the extent of such evidence required and rules on this point have been variously stated. In most cases, it has been required that the evidence concern the corpus delicti and some cases require that it touch every element thereof, but the diversity of these cases does not lend itself to the statement of any general rule. Only a few cases have allowed such confessions to be admitted where the extraneous proof did not definitely touch the corpus delicti and these cases may be considered somewhat ambiguous under their special facts.

■ There was no corroborated evidence in the present case that would justify the admission of the confession under any of the rules laid down by the various courts and the trial judge should have granted the motion for a directed verdict on the indictment against Tabor alone.

■ ■ The lack of evidence of the corpus delicti outside the confession is even more readily apparent in the conspiracy case. "The gist of the offense of conspiracy as defined by § 37 of the Criminal Code, * * * 18 U.S.C.A. § 88, is agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy." United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 207, 85 L.Ed. 128: Aside from the confession, there is no evidence that defendant ever knew, met or saw Ruby or had any connection with him. It is not even shown that Ruby was at the Induction center on the day defendant was examined. "A conviction of conspiracy may not be sustained solely on an admission, or confession, of the accused unless such admission or confession is corroborated by independent evidence of the corpus delicti". United States v. Di Orio, 3 Cir., 150 F.2d 938, 940. It is "primarily essential to establish the existence of a confederation or agreement between two or more persons before a conviction for conspiracy to commit an offense against the United States can be sustained. This statement requires no citation of authorities." Tingle v. United States, 8 Cir., 38 F.2d 573, 575.

■ It is significant that Ruby, who was jointly indicted with Tabor in the conspiracy indictment, was not tried with Tabor nor was he even called as a witness.

The record does not show why Ruby was not called but during the course of the argument the United States Attorney explained that Ruby, who is serving a long sentence for similar conspiracies with other draftees, was not put on the stand because he, Ruby, could not recall that he had had any dealing with Tabor. The failure to try Ruby for conspiracy with Tabor, or call him as a witness, are significant circumstances and present a situation in which the rule that corroboration of a confession is necessary may be properly applied.

■ There was no sufficient independent evidence in either case to corroborate the confession. In view of our conclusion as to the failure of proof to corroborate the confession it is not necessary to consider the question raised as to whether the confession was obtained under duress.

We are of the opinion that the admission of the evidence of witness Griffith was proper and did no harm to the defendant.

The judgment of the court below in both cases is accordingly

Reversed.