**Patricia Yvonne SMYLY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18479.**

United States Court of Appeals Fifth Circuit.

Feb. 24, 1961.

John R. Locke, Jr., San Antonio, Tex., for appellant.

Russell B. Wine, U. S. Atty., Arthur L. Luethcke, Preston H. Dial, Jr., Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before TUTTLE, Chief Judge, and JONES and BROWN, Circuit Judges.

TUTTLE, Chief Judge.

This appeal attacks a conviction based partially on the reception in evidence of extra-judicial admissions by appellant in a Dyer Act prosecution.[1]

---

1. This offense is described as follows:

"§ 2312. Transportation of stolen vehicles.

"Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been

It is the burden of appellant's contention here that proof of admissions made by her following arrest or apprehension of appellant and Larry Hoover, the driver of the car, but repudiated by her on her trial, was illegally admitted by the trial court or was illegally considered by the court in permitting the case to be submitted to the jury, because, so she says, there was a failure of corroboration of the admissions under the standards set by the Supreme Court in Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192, and Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101.

Entirely independent of the admissions, evidence which could be believed by the jury showed that in the vicinity of Johnson City, Texas, in the late evening of April 24, 1960, appellant, a married woman, 24 years of age, was a passenger in an automobile that was halted by police following a chase at a speed of 100 miles an hour and after the police had fired a warning bullet; that the automobile was the property of a resident of Mobile, Alabama, and that it had been stolen either one or two nights earlier by one Larry Hoover, a 17-year old, who was driving the car at the time of the chase and arrest; that appellant had accompanied Hoover from Mobile, had shared the expenses of the trip with him, including the sale by her of an electric iron en route to obtain money which they spent for gasoline for the car; that the couple were headed for Mexico; that appellant was married, but separated from her husband and was working at a bar or cafe in Mobile; that she had left two children behind in Alabama; Hoover had already been convicted on his plea of guilty under the Dyer Act and he testified at appellant's trial that he alone stole the automobile and that he told her he had borrowed it from a friend and that she knew nothing about the theft until the chase occurred. On the trial the appellant denied knowledge that the car was stolen until just before the arrest.

The admissions which are here under attack were offered in the form of testimony by three officers.

Texas Highway Patrolman, Arlie James, testified after relating the facts about the arrest as follows:

"I asked Mrs. Smyly, after having identified her, I asked her if she was with Mr. Hoover when the car was taken or stolen. She stated to me that she was. I asked her where she and Mr. Hoover had been prior to taking the car. She stated to me that she had been at her apartment in Mobile, Alabama. They had left the apartment together, walking, came upon this parked vehicle, parked on the street in a residential area with the key in the ignition switch. They got in the vehicle, drove it back to her apartment to pick up her personal effects, and after some one to two hours, possibly, left town. At that time I asked her where they had intended to go, provided they hadn't been apprehended. She stated to me that they were on their way to Mexico. I asked her if she had any particular reason for going to Mexico, and she shrugged her shoulders."

Federal Bureau Investigation Agent, James C. Webb, Jr., testified as follows:

"I talked to Mrs. Smyly about the alleged theft of a 1955 Ford, which occurred in Mobile, Alabama, which was recovered in Gillespie County, Texas. Mrs. Smyly informed that on or about April 22, 1960, she was at the Paradise Night Club in Mobile, and there met Larry Hoover. She said they left the night club at approximately 1:00 a. m. on the morning of April 23, 1960, and returned to her apartment. She said

stolen, shall be fined not more than $5,-000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 806." 18 U.S.C.A. § 2312.

they were at her apartment for about 45 minutes, at which time they both left, and went down the street there in Mobile. She said they walked around on the streets for a short time. They came upon a 1955, light colored, four-door Ford, which was parked on a street between two residences. She said the key was in the ignition of this car, so both of them got into the vehicle and returned to her apartment. They were there approximately 10 or 15 minutes, during which time she packed some of her clothes.

"They then left Mobile at approximately 2:15, 2:30 a. m., same morning. They drove from Mobile to New Orleans, Louisiana, where they ran out of gas. She said they then sold an electric iron, which she had brought with her, and with this money, they purchased some gas for their car.

"She said they then left New Orleans and continued traveling west on U.S. Highway 90. She said she recalled going through Houston, Texas, recalled going through Austin, Texas, and coming to Johnson City, Texas. She said they arrived there at approximately 6:30 P.M. on the night of April 24, 1960, where they ate dinner at a local cafe. She said they were at this cafe for approximately two hours or so, after which time they left, and while still in Johnson City, they obtained some gas out of a school bus. She said after getting this gas, they continued toward Fredericksburg, and were subsequently stopped by a Texas Highway patrolman."

Deputy City Marshal, Wilfred Dittmar, testified that he was present at the James interview and in response to the question, " * * * do you recall what the defendant said about the alleged theft of the automobile?", the appellant replied:

"Well, she stated that this boy Hoover had met her at a night club,

a bar, whatever it was; I don't remember; and they left there, and they went up to her apartment. They stayed up there at her apartment for a while, and then they started walking in the street, and they came upon this '55 Ford with keys in it, and they drove back to her apartment, packed her clothes, and they left Mobile."

■ Appellant's counsel offered no objection of any kind to the testimony of Webb and Dittmar. The only objection to James's testimony was on the ground that the alleged statement by appellant was not voluntary. This ground was not developed, and that issue is not now before us. This failure of counsel to object to the introduction of evidence now claimed to be inadmissible would normally prevent the party from complaining thereabout on appeal. Rule 51 F.R.Cr.P., 18 U.S.C.A., Butler v. United States, 5 Cir., 254 F.2d 875, 876. The appellant here did, however, move for a judgment of acquittal at the conclusion of the case, assigning as a ground therefor the following:

"2. The evidence is insufficient to prove that Defendant knew the automobile was stolen at the time it was transported in interstate commerce, since the Government's proof thereof is based solely on asserted extrajudicial statements of the Defendant, as opposed to the contradictory direct testimony in open court of the only two witnesses who have personal knowledge of these facts."

It is plain from a reading of this motion, counsel still made no complaint of the consideration by the trial court, in passing on the motion to acquit of all the evidence that had been introduced, including the testimony concerning the admissions of the accused. The motion was posited solely on the proposition that the admissions had been overcome, as a matter of law, by the controverting testimony by the accused and her convicted companion. Thus, neither upon the introduction of the evidence nor at any time before the submission of the case

to the jury did counsel raise the point that is here relied on for reversal; that is that the extra-judicial admissions of the accused either were inadmissible or were without probative value because they were without corroboration as they touched upon her knowledge that the vehicle was stolen.

It was not until after the verdict of guilty and after the court had passed sentence that counsel first gave the trial court an opportunity to consider the point that is now raised here. In a "motion for acquittal and in the alternative for a new trial", filed five days after conclusion of the trial and passage of sentence, appellant asserted the following ground:

> "3. Knowledge that the automobile was stolen is the corpus delicti of the offense with which Defendant was convicted and since the Government has relied for proof thereof solely on the uncorroborated extra-judicial admissions of the Defendant, the evidence is insufficient to sustain the conviction."

■■ The rule that a party may not go through the form of a trial, permit evidence to be adduced without objection, and then let the case be submitted to a jury without calling on the trial court to pass upon questions touching on the admissibility or possible limitations as to the use of some of the evidence, and then after an adverse verdict question the legality of such matters not presented to the trial court for a ruling is based not only on the clearest implications from the language of Rule 51, but it accords with common sense in the administration of justice. We have repeatedly held that Appellate courts are courts for the review of errors of law committed by the trial courts, "Normally the trial court is not put in error for acts or omissions that are not brought to its attention by motion or request for ruling." Smith v. United States, 5 Cir., 265 F.2d 14, 18, certiorari denied 360 U.S. 910, 79 S.Ct. 1297, 3 L.Ed.2d 1261. Any other rule would put a premium on trifling with the trial court and the entire jury system.

The state of the law in the Federal Courts as to the exact requirement, when the point is adequately presented, of the nature and quantity of corroborative testimony necessary to justify consideration of extra-judicial admissions is concededly in some confusion, although such is not the case within this circuit. See French v. United States, 5 Cir., 232 F.2d 736, certiorari denied 352 U.S. 851, 77 S.Ct. 73, 1 L.Ed.2d 62. The existence of such confusion elsewhere may present a strong temptation to wade into the field and attempt to clear up what is elsewhere uncertain or imprecise. We do not succumb to this temptation, although invited to do so by briefs both for the appellant and the Government.

We think this record presents nothing for consideration on the principal point sought to be raised. We conclude also that, assuming the admissibility and relevance of Mrs. Smyly's thrice repeated admissions, there is nothing to the general grounds that the evidence does not support the verdict of guilty. The judgment is

Affirmed.

JOHN R. BROWN, Circuit Judge (dissenting).

As this case was briefed and argued to us it presented the very substantial question, as the Court puts it, concerning "the nature and quantity of corroborative testimony necessary to justify consideration of extra-judicial admissions * * *."[2]

---

2. The Court states it this way.

"The state of the law in the Federal Courts as to the exact requirement, when the point is adequately presented, of the nature and quantity of corroborative testimony necessary to justify consideration, of extra-judicial admissions is concededly in some confusion, although such is not the case within this circuit. See French v. United States, 5 Cir., 232 F.2d 736, certiorari denied 352 U.S. 851, 77 S.Ct. 73, 1 L.Ed.2d 62. The existence of such confusion elsewhere may present a strong temptation to wade into the

Now all of that is washed out by the Court's holding that "the point" is not "adequately presented" and the "record presents nothing for consideration on the principal point sought to be raised."

In doing so, the Court, in my judgment, errs both on matters of trial and appellate procedure as well as substantive principles concerning corroboration of the *corpus delicti* as that bears on the sufficiency of the evidence to sustain conviction.

As to procedure it first confuses the problem with *admissibility* of evidence, although that is not involved at all. Next, it regards the specification of reasons in the motion for judgment of acquittal as inadequate to raise this contention when, under the law, no specification of reasons whatsoever is required. That permits the Court, somewhat obliquely, then to recognize the substantive problem and say that whereas other Courts of Appeals may be confused, we are, thankfully, more fortunate. For with us, all has been declared as the law of the Medes and Persians which altereth not once we handed down French v. United States, 5 Cir., 1956, 232 F.2d 736, even though that case, as I there pointed out in a special concurrence, ignored altogether a decisive, controlling and contemporary recent decision of the Supreme Court.

As the case now presents matters of recurring and substantial importance, I

field and attempt to clear up what is elsewhere uncertain or imprecise. We do not succumb to this temptation, although invited to do so by briefs both for the appellant and the Government." 287 F.2d at page 763.

3. The appellant's four specifications of error complain that "The Court erred in overruling Appellant's Motion for Acquittal made at the close of all the evidence [1] for the reason that knowledge the automobile was stolen is part of the 'corpus delicti' of the offense * * and must be proved by some evidence independent of her extrajudicial confession * * * [2] because the only evidence that she knew the automobile was stolen was her extrajudicial confession * * * which was not sufficiently cor-

think it warrants an extended statement of the reasons for my disagreement.

### I.

At the outset, no question of *admissibility* of evidence was ever asserted. The attack has been that, conceding the testimony from the officers was *admissible,* as such, nevertheless it, and the remaining evidence, was insufficient as a matter of law to sustain conviction.[3]

More important, the problem of corroboration of the *corpus delicti* is not one of admissibility. The question as Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101, and Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192, make so clear is the sufficiency of corroboration to sustain a conviction based upon extrajudicial admission. That is the approach of the text writers as well. 7 Wigmore, Evidence §§ 2070–2074 at 393–406 (3rd Ed. 1940); McCormick, Evidence § 110 (1954). In some jurisdictions there may be an incidental question of timing— e. g., whether the independent corroborative evidence must precede the offer of the extrajudicial admission. But this could be of no importance since in the Federal Courts this is left to the trial judge's discretion. 7 Wigmore, Evidence § 2073 at 404 (3rd Ed. 1940).

Consequently, the Court's refusal to consider Appellant's arguments here on the ground that no objection was made to

roborated by independent evidence * * ▮ because there was insufficient evidence to prove that she aided and abetted the commission of the offense, * * * ▮ because the evidence is insufficient as a matter of law to prove * * * that Appellant knew the car was stolen * * * where the only proof was her extrajudicial confession and this was directly contradicted * * *." These certainly complied with our Rule 24(2) (b), 28 U.S.C.A.

Joining issue on these, the Government's brief phrases the issue: "* * Appellant's first two points raise the question of whether or not a Dyer Act conviction can be sustained where the only proof that the defendant knew the vehicle was stolen is her extrajudicial confession."

the *admission* in evidence of the extra-judicial admissions is completely irrelevant.

## II.

The Court next proceeds to hold that determination of the critical issue must be avoided because the motion for judgment of acquittal was not sufficiently specific to " * * * raise the point * * * here relied on for reversal * * * that the extra-judicial admissions of the accused either were inadmissible or where without probative value because they were without corroboration as they touched upon her knowledge that the vehicle was stolen." 287 F.2d at page 763. This is based on the asserted deficiencies of paragraph 2 of the motion, quoted above page 762. It was not, the Court declares, until the quoted paragraph 3 (page 763) was belatedly filed that the matter was adequately presented.

There are several things wrong with this. First, read in the light of the aim of the Federal Rules of Criminal Procedure which were to end artificial technicalities, the specification amply pointed out the problem so that an alert Judge, as Judge Rice most certainly is, would see that the question was the substantive sufficiency of the extrajudicial admission in the context of the record. Second, the motion categorically challenged all of the evidence in the most direct terms and this necessarily embraced extrajudicial admissions as well as the nature and sufficiency of corroborative evidence.[4]

More important, Rule 29 does not require any statement of reasons. All that is required is that the motion state that the "evidence is insufficient to sustain a conviction of such offense or offenses."[5]

In two respects Rule 29 is in sharp contrast to its sometime counterpart in the Civil Rules, F.R.Civ.P. 50, 28 U.S.C.A. The first, as pointed out by Judge Rives, concurring in our decision in Jackson v. United States, 5 Cir., 1958, 250 F.2d 897, 901, which holds that the Trial Judge at the close of the Government's evidence may not take a motion for judgment of acquittal "along with the case," is the provision of Rule 29 that puts a burden on the Judge without any motion whatsoever. It declares that the "court on motion of a defendant *or of its own motion* shall order the entry of judgment of acquittal * * *." If a Judge may, or must, enter judgment of acquittal, this must assume that a Judge has a sufficient understanding of the law and a discernment of what has been proved or not proved to enable him to make the decision required by the law without being told wherein or whereby. On the other hand, in a civil case a motion by a party is required.[6] Next, F.R.Civ.P. 50(a) expressly provides that "A motion for a directed verdict shall state the specific grounds therefor." There is no like provision in F.R.Crim.P. 29 nor may it be imported, as the Court does through reliance on F.R.Crim.P. 51.[7]

4. Paragraph 1 of the motion for judgment of acquittal stated:

"1. The evidence is insufficient to prove that Defendant transported the automobile from the state of Alabama to the state of Texas, or that she aided or abetted the transport thereof."

5. F.R.Crim.P. 29(a). *"Motion for Judgment of Acquittal.* Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a convic-tion of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right. * * *"

6. So much is this so that on occasion the filing of the initial motion under F.R.Civ. P. 50(a) and the notice and motion under F.R.Civ.P. 50(b) assumes constitutional proportions under the Seventh Amendment. See the cases collected in Yorkshire Indemnity Co. of New York v. Roosth & Genecov Production Co., 5 Cir., 1958, 252 F.2d 650, 657 note 11.

7. F.R.Crim.P. 51. "Exceptions to rulings or orders of the court are unnecessary and for all purposes for which an excep-

More than that, this Court has categorically held that no specification of reasons is required whatsoever. We said in Huff v. United States, 5 Cir., 1959, 273 F.2d 56, 60:

> "The defendant moved for a judgment of acquittal at the close of all the evidence on the ground that the evidence was insufficient to sustain a conviction. Rule 29, Federal Rules of Criminal Procedure, does not require the grounds of such a motion to be more specifically stated. See United States v. Jones, 7 Cir., 1949, 174 F.2d 746, 748. * * *"

Consequently, neither ground asserted by the Court affords any basis for abstention or avoidance of decision on the important *corpus delicti* issue.

### III.

Although we have the duty to decide, I do not understand that the Court means to do so by its reference to our decision in French v. United States, 5 Cir., 232 F.2d 736, 738 (see note 2, supra). The confusion which the Court finds happily lacking in the Fifth Circuit relates to the precise point here presented. Does *corpus delicti* for this crime include the third element of the identity of the defendant?

The Court now apparently thinks this was answered for all time in all cases in all crimes when, rejecting "the broad claim that to prove the *corpus delicti* the evidence aliunde the confession must establish every essential element of the offense charged including the connection of the accused with the crime, that is, his identity as the criminal," we declared:

> "We do not at all agree. On the contrary, we share the view of most American courts that the phrase '*corpus delicti*' includes but two elements: first, the fact of an injury or loss; and secondly, the fact of *somebody's* criminality as the cause of the injury or loss. Furthermore, Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101, 45 A.L.R.2d 1308, makes it clear that corroborative evidence need not be sufficient, independent of the confessions of the accused, to establish these two elements which constitute the *corpus delicti*. * * *" 232 F.2d at pages 736, 738.[8]

Perhaps as a two, not three, element Circuit we are free from confusion. But I do not think we are free from error. For despite this positive declaration by French and the caustic comments of Wigmore that it is "too absurd to be argued with"[9] the fact remains that the Supreme Court has expressly held that element three is included as to intangible crimes. Smith v. United States, 1954,

---

tion has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor; but if a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice him."

I have checked every annotation under F.R.Crim.P. 51 in 18 U.S.C.A. (1951 ed.) through the 1961 cumulative pocket part supplement. Not a single case deals with motions for judgment of acquittal. The hundreds of annotated cases are concerned with rulings on the admissibility or exclusion of evidence, instructions to the jury, misconduct of counsel, and the like.

8. To this, I stated in my special concurrence, 232 F.2d 736, 741:

"I do not think it is open to us to join with the 'most' American courts

as on the same day the Supreme Court handed down Opper v. United States, * * * it decided Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 198, 99 L.Ed. 192. Smith categorically accepting the teaching of Forte (Forte v. United States, 68 App.D.C. 111, 94 F. 2d 236, 127 A.L.R. 1120), which it cites, plainly states concerning crimes producing no tangible injury, 'As to this [intangible] crime, it cannot be shown that the crime has been committed without identifying the accused. * * * We choose to apply the rule, with its broader guarantee, to crimes in which there is no tangible *corpus delicti*, where the corroborative evidence must implicate the accused in order to show that a crime has been committed. * * * [Citing cases.]' "

9. After discussing elements one and two, Wigmore states:

"(3) A third view, indeed, too absurd to be argued with, has occasionally been

348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192. More than that an intangible crime encompasses transportation of stolen vehicles as the Court of Appeals held in Forte v. United States, 1937, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120. This case was expressly approved in Smith.

How does this fit into this case?

## IV.

What should be made clear at the outset—and what, in my estimate, the Court's opinion never acknowledges, much less makes clear—is the particular crime of which this woman was actually charged. To be sure, the Information alleged that she " * * * transported a stolen motor vehicle [described] from * * * Alabama to * * * Texas * * * and * * * then knew the motor vehicle had been stolen." This was, of course, permissible under the aiding and abetting statute.[10] But the Government's case did not undertake to prove that she stole the car or that she even transported it in the sense of physically driving the car or controlling its movements. What the Government undertook to prove, and the most it proved, was that as a willing passenger accompanying Hoover, she facilitated the "transportation" by spending some of her money for food, lodging and expenses to accomplish the trip.

That meant that while in many ways Hoover's crime might be elements of her crime, her crime was something quite

distinct. As to her, the Government had to prove substantially more than the fact that (a) Hoover stole the car, (b) drove it interstate to Texas, (c) with knowledge it was stolen and that (d) as a companion she furnished finances. Specifically, she had to be implicated in an affirmative way. "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' L. Hand, J. in United States v. Peoni (CCA 2d N.Y.) 100 F.2d 401, 402." Nye & Nissen v. United States, 1948, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919, 925. We have, first in Russell v. United States, 5 Cir., 1955, 222 F.2d 197, 199, and repeated in McClanahan v. United States, 5 Cir., 1956, 230 F.2d 919, 924, certiorari denied 352 U.S. 824, 77 S. Ct. 33, 1 L.Ed.2d 47, put it this way. "There must exist a community of unlawful intent between the accessory and the perpetrator of the crime, but ' * * * an accessory is liable for any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded, although such consequence may not have been intended by him * * *.' "[11]

On the Government's case which limited her actions to furnishing money and accompanying Hoover, what would con-

---

advanced, at least by counsel, namely, that the 'corpus delicti' includes the third element also, i. e., the *accused's identity* or agency as the criminal. By this view, the term 'corpus delicti' would be synonymous with the whole of the charge, and the rule would require that the whole be evidenced in all three elements independently of the confession, which would be absurd." (Emphasis in the original.) 7 Wigmore, Evidence § 2072 at 402 (3rd ed. 1940).

10. 18 U.S.C.A. § 2(a). "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.

"(b) Whoever causes an act to be done, which if directly performed by him

would be an offense against the United States, is also a principal and punishable as such."

11. See also Phelps v. United States, 5 Cir., 1958, 252 F.2d 49, 52, citing Risinger v. United States, 5 Cir., 1956, 236 F.2d 96, 99: "In order for one to be an accomplice he must be concerned in the commission of the specific crime with which the defendant is charged, he must be an associate in guilt of that crime, a partipant in that offense * * *."

Mere presence at the time the vehicle was stolen or continued presence as a passenger would not constitute a crime, either as a principal or an aider and abettor. This is clear from United States v. Williams, 1951, 341 U.S. 58, 64, 71 S.Ct. 595, 599, 95 L.Ed. 747. "Aiding

stitute a federal crime? Traveling across state lines and presumably living with a man *not* her husband might have been immoral, certainly indiscreet, and perhaps, for him, a Mann Act violation as well. For her, a 24-year-old, near alcoholic, married woman, to leave two children behind in Alabama, run off with a young 17-year-old boy and then furnish her money as well was but further indicia of moral delinquency. But it is no federal crime either to be dissolute or extend it interstate.

What would make these actions a federal offense—and all that would—was *knowledge* by her that Hoover was committing a federal crime, and that she was, as the cases state, knowingly making herself an associate in the guilt of that crime, that is participating in the offense. That required *knowledge* by her that the car was stolen. It was her knowledge and no one else's which alone would cast her criminally.

For her conduct to amount to a federal offense, it was therefore indispensable to show that she *knowingly* facilitated (by financing, etc.) transportation of the car by Hoover *knowing* the car to have been stolen. As to her, the whole crime turns upon *knowledge* of the stolen character of the vehicle. There is thus no "crime" which may be carved up into the theoretical elements of *corpus delicti* apart from the personal knowledge of this specific, personal and immediate defendant.

## V.

It was precisely just such considerations that led the Court in Forte to hold that the corroboration must encompass the third element—the defendant's connection with the crime. "In the instant case the *corpus delicti* is transportation of the vehicle in interstate commerce from the District of Columbia to Maryland knowing that it was stolen. The contention of the Government that the *scienter* is not a necessary element of the *corpus delicti* cannot be sustained. There is nothing criminal under the statute about transporting a vehicle across a state line unless the person transporting it knows it to be stolen. * * * It is to be noted * * * that in certain types of crimes involving *scienter* on the part of the accused it is not possible to separate, either conceptually or practically—that is in respect of the proof—the *scienter,* as an element of the *corpus delicti,* and the agency of the accused. So in the crime of receiving stolen goods knowing them to be stolen, and in the crime at bar, it is not possible to separate, either conceptually or practically, the element of guilty knowledge in the transportation and the element of agency of the accused as the criminal. * * *." 94 F.2d at pages 243–244.

And what has happened to Forte? Naught save the imprimatur has now removed it from a Wigmorian Index Expurgatorius. For in the most unmistakable terms and by express reference to it, this principle of Forte has been authoritatively approved in Smith v. United States, 1954, 348 U.S. 147, 75 S. Ct. 194, 99 L.Ed. 192, 199:

"In order to convict of serious crimes of violence, then capital offenses, independent proof was required that *someone* had indeed inflicted the violence, the so-called corpus delicti. Once the existence of the crime was established, however, the guilt of the accused could be based on his own otherwise uncorroborated confession. But in a crime such as tax evasion there is no tangible injury which can be isolated as a corpus delicti. As to this crime, it cannot be shown that the crime has

and abetting means to assist the perpetrator of the crime." Appended to this statement is the following footnote.
"4. To be present at a crime is not evidence of guilt as an aider or abettor. Hicks v. United States, 150 U.S. 442, 447, 450, 14 S.Ct. 144, 37 L.Ed. 1137, 1139, 1141. Cf. United States v. Di Re, 332

U.S. 581, 587, 68 S.Ct. 222, 225, 92 L. Ed. 210, 216, 12 A.L.R. 279. The instructions at the trial of the substantive crimes followed this rule. E. g., 'I can't make it too emphatic to you, gentlemen, that mere presence when a crime is committed is, of course, not sufficient to render one guilty as aider or abettor.'"

been committed without identifying the accused. Thus we are faced with the choice either of applying the corroboration rule to this offense and according the accused even greater protection than the rule affords to a defendant in a homicide prosecution, Evans v. United States, (C.A.10th Kan.) 122 F.2d 461; Murray v. United States, 53 App.D.C. 1119, 288 F. 1008, or of finding the rule wholly inapplicable because of the nature of the offense, stripping the accused of this guarantee altogether. We choose to apply the rule, with its broader guarantee, to crimes in which there is no tangible corpus delicti, where the corroborative evidence must implicate the accused in order to show that a crime has been committed. See, e. g., Tabor v. United States (C.A.4th Md.) 152 F.2d 254; United States v. Kertess (C.A.2d) 139 F.2d 923; Ercoli v. United States, 76 [U.S.] App. D.C. 360, 131 F.2d 354; Pines v. United States (C.A.8th Iowa) 123 F.2d 825; Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 127

A.L.R. 1120; Tingle v. United States (C.A.8th Mo.) 38 F.2d 573; Wynkoop v. United States (C.A.9th Cal.) 22 F.2d 799; Daeche v. United States (C.A.2d N.Y.) 250 F. 566." 348 U.S. at page 154, 75 S.Ct. at page 198.

This is a recognition by the Supreme Court that there are some occurrences which are not crimes in any sense apart from the knowledge of the particular defendant and as to them "the corroborative evidence must implicate the accused in order to show that a crime has been committed".[12] This is, as it should have been, a repudiation of Professor Wigmore's extravagant statement with which others do not agree [13] and which actually is but an outcropping of his hostility to the whole idea of corroboration and the anguish he suffers because we solve this in an American way and do not follow the English rule.[14] But the experience even in this enlightened era subsequent to 1940 when Professor Wigmore last wrote, or 1937 when the Court of Appeals in Forte was writing under the vivid influence of the contemporary

12. It should be noted that the corroborative evidence "must implicate the accused." Consequently, it is not sufficient that it merely tend to substantiate the general trustworthiness of the admission which does "implicate the accused." Since the "corroborative evidence" is evidence independent of the admission, this means that such independent evidence must itself, to some credible degree, link the accused with the event. As I point out later, Smith and Opper have actually added to the prosecution's burden.

13. See Proof of the Corpus Declicti Aliunde the Defendant's Confession, 103 U.Pa.L.Rev. 638 (1955). "Professor Wigmore refers to such a definition as 'absurd' since it requires proof of the entire case without utilizing the defendant's confession, and today no court adheres to such a definition. In many crimes, however, it is very difficult to prove the corpus delicti without connecting the defendant with the crime. Among these would be drunken driving, illegal use of narcotics, any offense involving fraud, such as tax evasion, and any offense of which scienter is an element, such as transporting a car across a state line knowing it to be stolen or knowingly permitting the consumption of

intoxicating beverages in one's restaurant without a license. But merely because proof of the corpus delicti, in effect, involves proof of the whole charge, the prosecution is not relieved from proving the corpus delicti aliunde the confession." 103 U.Pa.L.Rev. at 651.

"Proof of the * * * scienter in transporting a stolen car across a state line knowing it to be stolen * * * [is] * * * essential to prove of the criminality and, therefore, should be included in the corpus delicti." 103 U.Pa. L.Rev. at 655.

"Although the present rule requires independent proof of only the first two elements of the crime, some of the factors underlying the corpus deliciti rule would provide as much reason for applying the rule to the third element as to the first two." 103 U.Pa.L.Rev. at 676.

14. 7 Wigmore, Evidence § 2070 at 395 (3rd ed. 1940):
"The policy of any rule of this sort is questionable. No one doubts that the warning which it conveys is a proper one; but it is a warning which can be given with equal efficacy by counsel or * * * by the judge in his charge on the facts. Common intelligence and cau-

Wickersham Report,[15] has not justified his optimistic belief that abuse of confessions as an instrument of law enforcement is a thing of the past. On the contrary, hardly any other subject has so much occupied the critical attention of the Supreme Court as it undertakes the serious responsibility of determining whether convictions, state and federal, have been based upon confessions wrought by impermissible physical or psychological or psychopathic coercive forces.[16] Scarcely at any other point do we come face to face with the prospect that the police state [17] may, as elsewhere, engulf us too. Unscrupulous criminals may indeed, as Wigmore fears, speak successfully through unscrupulous advo-

tion, in the jurors' minds, will sufficiently appreciate it, without a laying on of the rod in the shape of a rule of law. Moreover, the danger which it is supposed *to guard against is greatly exaggerated* in common thought. That danger lies wholly in a false confession of guilt. Such confessions, however, so far as handed down to us in the annals of our courts, have been exceedingly rare *(ante,* § 867). Such a rule might ordinarily, if not really needed, at least be merely superfluous. But this rule, and all such rules, are *today constantly resorted* to by unscrupulous counsel as mere verbal formulas with which to entrap the trial judge into an error of words in his charge to the jury. These capabilities of abuse make it often a positive obstruction to the course of justice."

15. National Commission on Law Observance and Enforcement, Report No. 11, Lawlessness in Law Enforcement (1931). See McCormick, Evidence § 109 at 228 (1954).

16. In numerous cases the Supreme Court has struck down convictions due to the manner in which a confession was obtained. Blackburn v. Alabama, 1960, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242; Spano v. People in State of New York, 1959, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; Payne v. State of Arkansas, 1958, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975; Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479; Fikes v. State of Alabama, 1957, 352 U.S. 191, 77 S.Ct. 281, 1 L. Ed.2d 246; Reeves v. Alabama, 1954, 348 U.S. 891, 75 S.Ct. 214, 99 L.Ed. 700; Leyra v. Denno, 1954, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948; United States v. Carignan, 1951, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48; Johnson v. Com. of Pennsylvania, 1950, 340 U.S. 881, 71 S. Ct. 191, 95 L.Ed. 640; Harris v. State of South Carolina, 1949, 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815; Turner v. Com. of Pennsylvania, 1949, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810; Watts v. State of Indiana, 1949, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801; Upshaw v. United States, 1948, 335 U.S. 410, 69 S. Ct. 170, 93 L.Ed. 100; Lee v. State of Mississippi, 1948, 332 U.S. 742, 68 S.Ct. 300, 92 L.Ed. 330; Haley v. State of Ohio, 1948, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224; Ashcraft v. State of Tennessee, 1946, 327 U.S. 274, 66 S.Ct. 544, 90 L.Ed. 667; Malinski v. People of State of New York, 1945, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; Ashcraft v. State of Tennessee, 1944, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192; Anderson v. United States, 1943, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829; McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Ward v. State of Texas, 1942, 316 U.S. 547, 62 S.Ct. 1139, 86 L.Ed. 1663; Vernon v. State of Alabama, 1941, 313 U.S. 547, 61 S.Ct. 1092, 85 L.Ed. 1513; Lomax v. State of Texas, 1941, 313 U.S. 544, 61 S.Ct. 956, 85 L.Ed. 1511; White v. State of Texas, 1940, 310 U.S. 530, 60 S. Ct. 1032, 84 L.Ed. 1342; Canty v. State of Alabama, 1940, 309 U.S. 629, 60 S.Ct. 612, 84 L.Ed. 988; Chambers v. State of Florida, 1940, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716.

And in others the Court has had to deal with the contention of involuntary confessions. Cicenia v. LaGay, 1958, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523; Crooker v. State of California, 1958, 357 U.S. 433, 78 S.Ct. 1287, 2 L. Ed.2d 1448; Thomas v. State of Arizona, 1958, 356 U.S. 390, 78 S.Ct. 885, 2 L. Ed.2d 863; Stein v. People of State of New York, 1953, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522; Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Stroble v. State of California, 1952, 343 U.S. 181, 72 S.Ct. 599, 96 L. Ed. 872; Gallegos v. State of Nebraska, 1951, 342 U.S. 55, 72 S.Ct. 141, 96 L. Ed. 86; Taylor v. State of Alabama, 1948, 335 U.S. 252, 68 S.Ct. 1415, 92 L.Ed. 1935; United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; Lyons v. State of Oklahoma, 1944, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481; Lisenba v. People of State of California, 1941, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166.

17. The problem is difficult enough as to formal written confessions obtained by the police after protracted questioning. The practical impossibility of the citizen disproving the alleged confession is

cates to claim the requirement of corroboration. But when they do, and a court of justice accords the protection of that right, they are really, in a strange sort of way, unintentionally making their contribution to a civilization of freedom under law. This affirms for the world that man in his nobler institutions may reflect the image of God who "sendeth rain on the just and unjust."

Although, as I pointed out in French, see note 8, supra, this Court ignored Smith altogether, its reliance there, and inferentially here on Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101, suggests strongly that the Fifth Circuit holds that that which the Supreme Court gave with its right hand in Smith, it took away by its left in Opper. I do not think that a proper reading of Opper supports any such interpretation,[18] or the awesome implication that each of the two Supreme Court opinions exhausted its vitality the moment the delivering Justice laid it down.

What Opper dealt with was not the elements of *corpus delicti*—whether one, two or three. Rather it was concerned with the character and amount of evidence required independent of the admission (confession). As that opinion reflects, the course of federal decisions up to that point had been divergent. There were three main streams broadly defined by the Court. Among these was Forte. This line of cases stood for the proposition that the proof independent of the admission had to do more than merely support the confession. It had to be substantial evidence "touching and tending to prove each of the main elements or constituent parts of the *corpus delicti* * * *."[19] Of course that principle was

not adopted in Opper. Opper laid down the rule that the independent evidence, as such, need not establish the *corpus delicti*—whether element one, or two (or both), or three. All that was required was that the independent evidence tend to establish the trustworthiness of the admission.

But in making that choice as to a limited problem in the field of corroboration of confessions, the Supreme Court in Opper did not undertake to reject the Forte principle on what elements—one, two, or three—of any particular type of crime would constitute the *corpus delicti*.

Thus Forte on the principle of corroboration of all three elements stands unimpeached. Indeed, it stands with renewed vigor and prestige.

### VI.

This leaves only the question whether interstate transportation of a vehicle knowing it to be stolen is of that category of "intangible" crime as to which the Supreme Court, disregarding Wigmore's charge of absurdity, requires corroboration of the third element. Several things point conclusively to the answer for me. First, this proposition of law is specifically announced in Forte. It was the reason for rejecting as inadequate the defendant's categorical admission that he knew the car was stolen. The careful distinction made by the Supreme Court in the two main holdings of Forte is convincing evidence that that Court knew what Forte involved. With that precise awareness, the Court then cited Forte specifically in Smith as an example of "crimes in which there is no tangible *corpus delicti*," 348 U.S. at page 154, 75 S.Ct. at page 198. Second, for the rea-

---

only enhanced as to oral, informal statements made (as here) by a suspect to arresting or investigating officers. It is then often just a case of one man's uncorroborated word against another's. And that "word", unlike an express acknowledgment of guilt which carries some seeds of trustworthiness due to its awesome tones and obviously damaging character, may relate merely to some subsidiary element or evidentiary detail. A man's liberty may therefor turn on uncorroborated "admissions" of a kind

inherent in today's intersection damage suits.

18. "Nor does Opper seek to undo that which Smith had just done. Smith involved the question as to *what* was the *corpus delicti* * * * and the nature of the corroboration needed * * *. Opper was concerned only with the latter point of corroboration of the crime * * *." French v. United States, supra, 232 F.2d at page 741.

19. From Ercoli v. United States, 1942, 76 U.S.App.D.C. 360, 131 F.2d 354, 356,

sons discussed in Forte as well as those factors outlined by me concerning the unique problems inherent in this "aiding and abetting" case, what is tangible is merely the vehicle. The crime is incapable of tangible demonstration. An Alabama car is in Texas. That is no crime. An Alabama car is driven from Alabama to Texas. That is no crime. An Alabama car is driven from Alabama to Texas by one not the owner. Still that is no crime. What—and all—that makes it a crime is the defendant's *knowledge* that it was stolen. That is not capable of being seen, or felt, wrapped in a package, weighed or photographed. The crime is intangible.

### VII.

Once Smith applies to require that the "corroborative evidence must implicate the accused"[20]—i. e., the third element—Smith then furnishes the guide by which to measure the sufficiency of that corroboration. It specifically holds that "corroboration is necessary for all elements of the offense established by admissions alone * * *," 348 U.S. at page 156, 75 S.Ct. at page 199. The same idea is stated somewhat differently in Opper that the "corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." 348 U.S. at page 93, 75 S.Ct. at page 164. To this extent Opper and Smith rather than standing for a lessening of the burden of corroboration as some may think, actually enhance it. For if the " * * * element * * * of the offense * * * established by

admission alone * * *" was, for example, the third element, i. e., defendant's connection with the crime in a *tangible* type of crime, the Government must nevertheless offer evidence independent of the admission to establish the trustworthiness of the admission as to that critical fact. Formerly that was not necessary. So much was demonstrated by the Court's minute analysis of the corroborating testimony in Smith as well as in the companion net worth case of United States v. Calderon, 1954, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202.[21]

As a vital element in the Government's case against this aider and abetter, it had to establish beyond a reasonable doubt that she *knew* that the car was stolen. On this record we have to assume that to the jury this was proved directly only by her admission. Quite apart from the "third element" controversy, Smith and Opper now require that the trustworthiness of the admission as to that vital fact be established by independent corroborative evidence.

The crime was intangible. The *corpus delicti* therefore encompassed element three—implicating this defendant in the crime. Knowledge of the stolen character of the vehicle was established solely by her admissions. There was no corroboration as to either or both of these factors. The evidence was therefore insufficient as a matter of law.

The judgment of acquittal ought to have been granted.

I therefore respectfully dissent.

---

in which that Court summarizes the meaning of its own Forte case.

20. 348 U.S. at page 154, 75 S.Ct. at page 198.

21. The requirement of corroboration is not measured in terms of the theoretical elements of *corpus delicti*, the formal nature of the statement or the ultimate rather than evidentiary character of the fact admitted.

The Court in Smith, 348 U.S. at page 155, 75 S.Ct. at page 198, specifically points out that necessity of corroboration extends to all admissions "made * * * to an official charged with investigating the possibility of wrongdoing" when the "statement embraces an element vital to the Government's case."

Where the proffered corroboration is made up of "facts" independent of the admission which were in turn made known by other extrajudicial statements by the accused such other admissions must be corroborated by independent evidence before they can be received to corroborate the confession. See note 4 and the related text 348 U.S. at page 157, 75 S.Ct. at page 200.

In Calderon the Court rejected as inadequate corroboration of certain facts concerning the accused's financial history because they were "apparently * * * obtained from the [accused], and, standing uncorroborated, cannot serve to corroborate [the accused's] other admissions." 348 U.S. at page 165, 75 S.Ct. at page 188.