**UNITED STATES of America**

v.

**Robert E. CONLIN, Martin Joseph Joyce, and John J. Mullane.**

**Cr. No. 62-23.**

United States District Court
D. Massachusetts.
June 7, 1962.

W. Arthur Garrity, Jr., U. S. Atty., Thomas O'Connor, Asst. U. S. Atty., for plaintiff.

John J. Murphy, Boston, Mass., for Joyce and Mullane.

Philip W. Halloran and Joseph Sax, Boston, Mass., for Robert Conlin.

CAFFREY, District Judge.

The defendants herein, Robert E. Conlin, Martin Joseph Joyce, and John J. Mullane, were found guilty of violating 18 U.S.C. § 659 upon a jury verdict returned on May 17, 1962.

The defendants were at large on $10,-000 bail until after sentences of five years each were imposed on Monday, June 4, 1962, and thereafter counsel orally moved for bail pending appeal. Counsel were directed to file a written statement of what they believed to be the legal issues open on appeal later on June 4, but requested permission to file same on June 5. On June 5, counsel appeared and orally argued the matter, and stated that a written document would be available by noon on June 6, at which time counsel for defendant Mullane did file a three-page memorandum.

At the oral argument counsel for defendants Conlin and Joyce stated,

"As far as an appeal is concerned I feel that there is only one point in issue. * * * If we were to go up it would be on the sole point was the arrest legal or not?" Counsel for Mullane raised this and several other points in his memorandum which will be referred to briefly after consideration of the arrest and search.

During the course of the trial the jury was excused and the Court took evidence on a motion to suppress based on an allegedly illegal search conducted by three FBI agents after they had arrested defendants at gunpoint. The defendants called only one witness, FBI Agent Paul Rico, in support of this motion to suppress, and from his testimony the following facts appear without contradiction of any kind.

On the evening of December 7, 1961, the date of the arrest in question, FBI Agents Paul Rico, Roy MacDonald and John Kanaly, left the Office of the FBI on Atlantic Avenue at about 5:30 in an FBI car and proceeded to South Boston. They made a stop at the Gillette plant in South Boston at around 5:40, where they were looking for certain automobiles, one of which was Mullane's. This stop was of three or four minutes duration. The agents already knew that on November 22, 1961, a car registered to Eva Mullane, wife of the defendant Mullane, and known to be operated by the defendant Mullane on the basis of a State Police bulletin Rico had read, had been observed trailing an F. J. Cole truck which was carrying Gillette cartons which were in interstate shipment at that time. They knew that F. J. Cole was engaged as a connecting carrier of interstate shipments of Gillette Blue Blades. They knew that the registration plate of the Mullane car bore the number L–57710. At about 5:50, after leaving Gillette, Agent Rico telephoned the F. J. Cole Company from a nearby filling station and talked to one Mahoney, who advised him that an F. J. Cole truck had just picked up cartons of Gillette blades as part of an interstate shipment and had made a pick-up of other freight at the corner of Dorchester Avenue and Alger

Street in South Boston. Mahoney also told Rico that the truck-driver had just telephoned in to him to report that the truck had a flat tire and was stopped on Alger Street near Dorchester Avenue. The intersection of Dorchester Avenue and Alger Street is about one-half or three-quarters of a mile from the Gillette plant.

After getting this information (that a Cole truck carrying Gillette blades was disabled on Alger Street) the FBI agents proceeded along Dorchester Avenue to the corner of Dorchester Avenue and Alger Street, where Mullane, whom Rico knew, having seen him on 10 or 12 prior occasions, was observed standing on the corner looking down Alger Street in the direction of the disabled truck which was about 150 feet down Alger Street from the intersection. The agents continued past this intersection for a distance of about 500 yards and made a U-turn. On their return up Dorchester Avenue back toward this intersection, they observed Mullane's car, with the registration plate L–57710, pull out in front of them, occupied only by the driver. They observed this car turn into an alley which ran at right angles off Dorchester Avenue parallel with Alger Street, and they observed this car extinguish its headlights as it went into the alley. The end of this alley which paralleled Alger Street connected to Alger Street by a second alley parallel to Dorchester Avenue. The agents then proceeded in the direction they were following on Dorchester Avenue for about 500 yards and made a second U-turn and returned to the alley into which they had observed the entry of Mullane's car. They drove into the alley at 10 to 12 miles per hour. Although the alley was dark, not being a public way, it had some illumination from lights of a filling station located at the corner of the alley and Dorchester Avenue, and was also illuminated by the headlights of the FBI vehicle. They observed Mullane's car about 100 feet into the alley and drove the FBI car to within eight feet thereof. As they drove up the alley they observed Mullane on one side of his car holding a carton of Gillette Blades and observed Joyce on the other side of the car passing a carton to a third person inside the car. Agent Rico testified that at this time he knew what a carton of Gillette Blades looked like, had seen them many times before, and also knew the approximate value of such a carton. The three agents jumped from their vehicle and called out "Hold it, FBI." At this point all three defendants attempted to flee and were thereupon arrested at gunpoint. The truck-driver was taken to the car in the alley and identified the cartons as part of the shipment he had picked up because the numbers on the cartons matched the carton numbers on his waybill; whereupon the car was searched and seven cartons of Gillette blades, each addressed to an out-of State consignee, were removed.

Counsel for defendants indicate that the arrest was illegal because of the lack of an arrest warrant or of probable cause and claim that, therefore, the search of the car subsequent and incident to the arrest was also illegal for that reason. The contention that the FBI agents, with the background knowledge and visual observations above-described, did not have reasonable cause to believe they had caught defendants red-handed in the actual perpetration of the felony charged, in my opinion, can only be regarded as frivolous. The agents, in arresting on the basis of what they knew, plus what they observed, clearly arrested with probable cause in a situation which not only justified arrest but in which failure to arrest would have been tantamount to dereliction of duty.

With regard to whether the appeal is taken for the purpose of delay, counsel for all three defendants at the oral argument stated that their clients had instructed them to say that they would not appeal if the Court were to reduce the sentences to the three-year periods recommended by Assistant United States Attorney O'Connor. This attempted bargaining-away of appellate rights is not the type of conduct to be expected from an innocent person seriously claiming a right of appeal.

With regard to other points raised by counsel for Mullane, apart from the fact that he was not joined therein by counsel for Conlin and Joyce, suffice it to say that there were no requests for instructions by any of the defendants prior to the charge, and after the charge there was a brief colloquy at the bench in which counsel for Mullane did not make either a formal objection to the charge or request that corrective statements be made. See Butler v. United States, 88 U.S.App.D.C. 140, 188 F.2d 24 (1951), and Smyly v. United States, 287 F.2d 760 (5 Cir. 1961).

I rule that the asserted rights of appeal are frivolous and taken solely for delay.

I do not reach the discretionary question whether or not in view of the information contained in the pre-sentence reports and other relevant criteria, any of the defendants are proper subjects for admission to bail pending appeal.

Oral motions for bail denied.