**Willis SMITH, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17425.**

United States Court of Appeals
Fifth Circuit.

April 3, 1959.

Certiorari Denied June 15, 1959.
See 79 S.Ct. 1297.

---

Joseph A. St. Ana, Miami, Fla., for appellant.

David C. Clark, Jr., O. B. Cline, Jr., Asst. U. S. Attys., Miami, Fla., James L. Guilmartin, U. S. Atty., Lavinia L. Redd, Asst. U. S. Atty., Miami, Fla., for appellee.

Before RIVES and TUTTLE, Circuit Judges, and SIMPSON, District Judge.

TUTTLE, Circuit Judge.

This is the second appearance of this case here. Smith was convicted under the Harrison Narcotics Law, 26 U.S.C.A. §§ 2550 et seq., 3220 et seq., and sentenced to five years imprisonment. After his sentence he engaged new counsel who filed a motion for new trial, the principal basis of which was considered by the Court in Smith v. United States of America, 5 Cir., 252 F.2d 120. This ground was that, in open court in the presence of prospective jurors, the trial court made comments claimed to be highly prejudicial to appellant just prior to commencement of the trial.

Answering a motion of appellant's then counsel O'Quin for a list of the government's witnesses, the court said:

"You know the Federal Rules. The list of government witnesses are not furnished in criminal cases for very cogent reasons, in my opinion. Some of them would probably disappear during the trial."

Mr. O'Quin:

"I don't see how the court—"

The Court:

"Here we have a narcotics case. Grave penalties are involved. There is a great temptation to interfere with witnesses."

Mr. O'Quin:

"The government has ways of punishing them."

The Court:

"That doesn't bring back a fellow that might disappear some night. There are plenty of people in this court that would be glad to interfere with witnesses. I know you wouldn't do it.

"It has long been settled in Federal cases that a list of witnesses is not furnished except in civil cases."

The trial court overruled the motion and we affirmed, saying as to this particular ground:

"The accused fails to show that the Court's criticized answer to his motion was made within the hearing of any person who was later chosen and sworn as a juror in the case."

On motion for rehearing in this Court, appellant sought to prove by affidavit the fact that the court's remarks had been heard by jurors who actually sat in the case. This motion was overruled. It was not competent for this Court, of course, to review a denial of motion for new trial by considering facts not presented to the trial court in the motion. The Supreme Court denied certiorari, 357 U.S. 908, 78 S.Ct. 1151, 2 L.Ed.2d 1157.

Appellant then filed this motion under 28 U.S.C.A. § 2255, asserting that there are facts dehors the record that go to the validity of the trial itself. This contention is that the trial court, by making the quoted remarks within the hearing of the jurors who had already been accepted and were sitting in the jury box [1] in a small courtroom indicated his belief that this defendant would be a party to a physical assault on prospective government witnesses; that this colloquy so disturbed appellant's counsel O'Quin as to cause him to leave the courtroom without consulting with the accused, leaving him in the hands of an associate, whom neither the accused nor his wife had ever before seen and with whom they had had no consultation; that the lawyer, under no authority from them, then proceeded to attempt the defense without protecting appellant's rights by moving for a continuance or other relief because of the court's remarks in the presence of the jury.

The trial court dismissed the petition without a hearing.

■■ It is too well established to require elaboration or comment that a petition under Section 2255 cannot serve the office of an appeal on the merits. So, too, is it clear that issues disposed of on a

---

[1]. This is alleged in the petition and supported by nearly identical affidavits of five of the trial jurors as follows:

"On June 18, 1957, I was a member of the panel of prospective jurors summoned for jury duty in the District Court of the United States for the Southern District of Florida, Miami Division. To the best of my recollection there were 35 to 40 prospective jurors in attendance.

"On the said date I was accepted by counsel for the United States and the defendant, Willis Smith, and was sitting in the jury box of the south-east Courtroom of the Federal Building in Miami. This Courtroom is very small, I believe being approximately 20' x 47'. Conversation of the judge and attorney can be easily heard and understood by anyone in this Courtroom.

"After being sworn as a member of the jury panel, but prior to being sworn as a member of the jury accepted to try this case, I, Gaines Wilson, while sitting in the jury box, did hear the Honorable Judge Emett C. Choate engage in argument and general conversation with the attorney for defendant, Willis Smith. The argument and remarks I heard were regarding the defendant's attorney's request for a list of witnesses having to do with this trial that was to be heard by Judge Choate.

"I have recently read the first few pages of the transcript of trial proceedings and I clearly recall that the conversation and remarks therein written were actually made as written therein by the Court reporter.

"I do not know of any of the persons involved in this matter, either socially or professionally, and have no pecuniary interest in this matter, nor have I been promised any reward or favor of any nature or kind by any person in connection with the execution of this my true affidavit."

previous appeal will not be reviewed again on petition. Malone v. United States, 6 Cir., 257 F.2d 177.

In order to make effective appellant's contention that he had been prejudiced it was necessary for him in his motion for new trial to supplement the record to show that persons who later served on the trial jury had at least heard the criticized remarks of the trial judge. This could have been done by the filing, in support of his motion for new trial, of the affidavits which are now filed in support of the Section 2255 petition. This is, thus, simply a second effort to obtain an appeal on the merits on a ground that was insufficiently raised on the motion for new trial. This remedial statute was not intended to and it cannot accomplish that result. No reason is assigned why the affidavits now submitted in support of this motion could not have been obtained and submitted in support of the motion for new trial. The motion, therefore, does not present such a state of facts as to warrant the use by the court of the extraordinary powers granted under Section 2255.

In the previous appeal we did not reach the further objection urged by the government for disregarding this ground of appeal: that counsel made no motion for continuance or for interrogating the venire as to whether they had heard the court's remarks, in order to prevent any possible adverse effect on the jury. This objection is again made here by the government. It is countered by appellant by his assertion that a subsequent colloquy with the trial judge left his counsel in such a state that, following a short recess, he failed to return to the courtroom and left appellant's defense in the hands of an unauthorized associate. (This lawyer's name was entered on the docket as an associate of O'Quin's firm.)

The fallacy of this argument is that it is in conflict with the petition and affidavits when coupled with that part of the record which stands approved by appellant. The brief for appellant asserts that:

"* * * Subsequently, a heated exchange took place between the district judge and attorney O'Quin which does not appear in the record. During this exchange, the district judge threatened to hold attorney O'Quin in contempt of court. Thereupon a recess was called and upon the reconvening of court, attorney O'Quin was no longer present. These facts do not appear in the original record but if they did, *they would appear at the bottom of page 11* of the original record *just prior to the jury being sworn at the opening* statement." (Emphasis added.)

Assuming the correctness of this statement by counsel as to what occurred and the time it occurred, then the record completely refutes the contention that no one was given a reasonable opportunity to protect appellant's interest following the court's statement. Immediately after the court made its statement, O'Quin said:

"All right, your Honor, we are ready for trial. We take exception to the Court's ruling."

He then made a motion that the rule be invoked as to witnesses. This was granted. He then made a motion to exclude the government's principal witness which the court denied. The court then said:

"If you insist that Mr. Rudd testify first so that you may save his hearing the other witnesses before he testifies, I will consider that motion."

Mr. O'Quin:

"I know Mr. Rudd. If he was the prosecutor I wouldn't mind him being in here but being the witness, I do."

The Court:

"Your motion will be denied. Somebody from the Government should be here."

It is at this point then that counsel says that there was omitted from the record the colloquy and the recess.

We think it is without dispute that there was ample time and ample opportunity for appellant's personally chosen counsel to take whatever protective steps were indicated before he left the courtroom. Appellant does not argue that anything that was done thereafter during the trial by the associate gives rise to any basis for attacking the validity of the trial. Ordinarily, of course, failure by trial counsel to make an appropriate motion for relief in such a situation leaves nothing to appeal from, for the appellate courts are for the purpose of reviewing errors of law caused by orders and rulings of the trial court. Normally the trial court is not put in error for acts or omissions that are not brought to its attention by motion or request for ruling. Rule 51, F.R.Cr.P., 18 U.S.C.A. Moore v. United States, 5 Cir., 161 F.2d 932. See Thompson v. United States, 3 Cir., 283 F. 895.

Especially since, even with the affidavits taken at their face value, there is still no assertion that any juror realized that the court's statement in any way related to the case they were later to try, since they had not yet been sworn, we conclude that this is not such a case as would warrant our dealing with it under the plain error provisions of Rule 52, F.R.Cr.P. This weakness in appellant's case is fatal even though the point could be considered following our previous affirmance of the denial of the motion for new trial, which we have already indicated it cannot be.

The trial court was not required to hold a hearing on the Section 2255 petition since it conclusively appeared from the "files and records" of the case that appellant was entitled to no relief.

The judgment is affirmed.

RIVES, Circuit Judge (dissenting).

This appellant is serving a five-year penitentiary sentence imposed as the result of a jury verdict. Five members of the jury have sworn that they heard the trial judge reply to the motion of appellant's counsel for a list of the Government's witnesses, that, if furnished, "some of them would probably disappear during the trial. * * * That (ways of punishing) doesn't bring back a fellow that might disappear some night. There are plenty of people in this court that would be glad to interfere with witnesses."

The record shows that the judge made those statements. There has been no hearing to ascertain whether all or others of the jurors also heard them, but from the size of the courtroom, approximately 20 feet by 47 feet, the inference is clear that they did. In any event, if five jurors or a single juror was prejudiced by the statements, a new trial is called for. In the small courtroom there must have been few, if any, besides the appellant and his friends and witnesses who would, according to the judge's statement, be glad to interfere with the Government witnesses or to cause their disappearance overnight.

The majority says, "there is still no assertion that any juror realized that the court's statement in any way related to the case they were later to try," probably implying that the jurors' affidavits do not affirmatively show that they were prejudiced by the judge's statements. Again, there has been no hearing to develop the facts. The record of the original trial, however, shows that, just before the prejudicial statements were made, the court had called for trial the case of "United States vs. Willis Smith," and that the statements themselves were specifically directed to this appellant's case; for example, "Some of them (Government witnesses) would probably disappear during *the* trial. * * * *Here* we have a narcotic case. * * * There *are* plenty of people in *this* court that would be glad to interfere seriously with witnesses." (Emphasis supplied.) One indulges not merely in wishful thinking but in utter futility, when he imagines that the jurors did not understand that the judge was referring to appellant's case. If there had ever been any validity to the notion that jurors hear only what is intended for their ears, it was dissipated in this in-

stance by the affidavits of the five jurors that more than a year after the trial they still remembered the statements. Moreover, the proceedings at that point must have attracted the interest of everyone for the exchange had become spirited, and was almost immediately followed by a threat to punish Mr. O'Quin, appellant's attorney, for contempt.

Unless the affidavits of the five jurors and of the appellant and his wife are contradicted, I would think that a hearing is not necessary to prove prejudice on the part of the jurors. Jurors, like judges, should be free both from actual prejudice and from reasonable suspicion of prejudice. A hearing would likely be as unsatisfactory as was the examination of the jurors on voir dire. A juror is not usually so expert in psychology as to appreciate the effect which the judge's statements might have upon him. It is a common human trait for a man to fail to recognize his own prejudices, and practically every one of us considers himself, of all people, to be free from prejudice. A juror cannot be expected now, any more than upon voir dire, to admit that statements which the trial judge thought, albeit mistakenly, were fit to make in his presence had the effect of poisoning his mind.[1] Nevertheless, we hold the appellant's liberty cheap indeed when we underestimate the prejudicial effect on prospective jurors of such statements by a highly respected trial judge. If there be any doubt, at least the appellant should be afforded the opportunity of a hearing.

The majority says that the objection to the jury has been waived because not made forthwith before entering upon the trial. Without question that would have been the better practice. The record reveals, however, that within minutes after the prejudicial statements had been made by the trial judge, Mr. O'Quin, the attorney whom the appellant had employed, ceased to take any part in the trial. The only evidence in this record as to the circumstances under which Mr. O'Quin left the case is contained in the uncontested affidavits of the appellant and his wife to the following effect:

"Many prospective jurors were seated in and about the Courtroom and the jury box held twelve (12) prospective jurors. Upon the call by the Court of my case, Mr. O'Quin made a motion for a continuance of this case on the ground that he was not prepared to go to trial for several reasons, one of the reasons being that he had been denied a list of the witnesses intended to be used by the Government at this trial. Mr. O'Quin engaged in a heated argument with the Court, all of which took place before the prospective jurors in the jury box and could be clearly heard throughout the small Courtroom. The discussion became so heated that the Judge made a comment to Mr. O'Quin concerning, and having to do with, possible contempt of Court by Mr. O'Quin and very shortly the Judge declared a recess of the proceedings and left the Courtroom.

"After the recess had concluded and the Judge returned to the Courtroom, Mr. O'Quin, the attorney retained by my wife to represent me, did not return, and in his stead

---

1. I subscribe to the views expressed fairly recently by two of the Justices who, despite their frequent differences, think alike on this score:

Mr. Justice Black:

"The test of bias sufficient to exclude a juror for cause is not what the particular juror believes he could do. Long ago Chief Justice Marshall ruled that a person 'may declare that he feels no prejudice in the case, and yet the law cautiously incapacitates him from serving on the jury because it suspects prejudice,

because in general, persons in a similar situation would feel prejudice.' 1 Burr's Trial 414, 415 [United States v. Burr,] 25 Fed.Cas. 14,692g, [49] at page 50." Dennis v. United States, 1950, 339 U.S. 162, 176, 70 S.Ct. 519, 527, 94 L.Ed. 734.

Mr. Justice Frankfurter:

"Questions ought not to be put to prospective jurors that offer no fair choice for answer." Dennis v. United States, supra, 339 U.S. at page 182, 70 S.Ct. at page 526.

* * * the young man whom I had seen earlier, undertook to represent me."

In my opinion, those circumstances do not show any considered and intelligent waiver of the valid objections to this jury panel.

Further, in my opinion, the judge's prejudicial statements in the presence of the jurors constituted such a plain error or defect affecting substantial rights that they should be "noticed although they were not brought to the attention of the court." Rule 52(b), Federal Rules of Criminal Procedure. Indeed, the judge himself made the prejudicial statements when he could see that the jurors were present. Without objection or further ado, it then became his positive duty to see that the appellant was not tried before jurors who had overheard those statements.

The Fifth Amendment protects the appellant against a deprivation of his liberty without due process of law. The Sixth Amendment guarantees his right to trial "by an impartial jury." [2] Those constitutional rights have been purchased with too dear a price for them to be sacrificed upon such a record as this.

The majority says that the appellant lost his rights because his counsel failed to secure the affidavits of the jurors in time to support his motion for new trial. It seems to me that appellant's counsel had no reason to anticipate that the affidavits were needed in a hearing before a trial judge who knew the facts as well as, if not better than, anyone else. Indeed, since the facts have been disclosed by the affidavits of the jurors, and because the trial judge is himself a witness, I think that, in the event of a hearing, this trial judge should hold himself disqualified. See In re Murchison, 1955, 349 U.S. 133, 138, 139, 75 S.Ct. 623, 99 L.Ed. 942; United States v. Halley, 2d Cir. 1957, 240 F.2d 418, 419.

As already stated, however, I do not think a hearing is necessary to prove that the appellant should not be deprived of his liberty upon the verdict of jurors who heard the trial judge state that if the defendant were furnished with a list of the Government witnesses, "Some of them would probably disappear during the trial. * * * Here we have a narcotic case. * * * (Punishment) doesn't bring back a fellow that might disappear some night. There are plenty of people in this court that would be glad to interfere seriously with witnesses." This record, I think, establishes that appellant has not had a fair trial "by an impartial jury," and that he is being deprived of his liberty without due process of law. I therefore respectfully dissent.

---

**2.** "The Sixth Amendment requires that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.' The Amendment prescribes no specific tests. The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law. There is no ground for a contention—and we do not find that such a contention is made—that Congress has undertaken to preclude the ascertainment of actual bias. All persons otherwise qualified for jury service are subject to examination as to actual bias. All the resources of appropriate judicial inquiry remain available in this instance as in others to ascertain whether a prospective juror, although not exempted from service, has any bias in fact which would prevent his serving as an impartial juror." United States v. Wood, 1936, 299 U.S. 123, 133, 134, 57 S. Ct. 177, 179, 81 L.Ed. 78.

"Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." United States v. Wood, supra, 299 U.S. at page 145, 146, 57 S.Ct. at page 185.

See also, Dennis v. United States, 1950, 339 U.S. 162, 172, 70 S.Ct. 519, 94 L.Ed. 734.