Charles Edward JACKSON
v.
UNITED STATES of America.
No. CA-4-63-138.

United States District Court
N. D. Texas,
Fort Worth Division.
Jan. 2, 1964.

---

Charles Edward Jackson, pro se.

Robert Ward, Dallas, Tex., for the Government.

BREWSTER, District Judge.

The petitioner seeks by his motion under 28 U.S.C.A. § 2255, to vacate his conviction in this Court in Criminal No. 10,-285, United States v. Charles Edward Jackson, for selling narcotics in violation of 21 U.S.C.A. § 174. The conviction has been affirmed in Jackson v. United States, 5 Cir., 1963, 311 F.2d 686.

The petitioner collaterally attacks the validity of his conviction on the grounds that there was no evidence to show that the heroin was illegally imported, and that the indictment is *"potently* unconstitutional, illegal, and is void". (Emphasis ours).

The motion contains some general language to the effect that the indictment does not charge a federal offense and that it is inadequate to confer jurisdiction. The specific grounds upon which the petitioner claims that the indictment is void may be summarized as follows:

1. It failed to allege that heroin was a narcotic drug, and that the defendant knew the heroin had been imported unlawfully.

2. It identified the purchaser by description as a special employee of the Bureau of Narcotics, rather than by name.

3. The special employee designation was a false description.

The conviction in this case was in a trial before a jury on a plea of not guilty. None of the matters complained of in the present motion was raised in the trial or the appeal of the criminal case.

It is apparent from the face of count one of the indictment upon which the petitioner was convicted that it is not fatally defective on either the general or the-

specific grounds now urged. That count reads:

"The Grand Jury charges:

"That on or about Nevomber 11, 1961, in Tarrant County, Texas, in the Fort Worth Division of the Northern District of Texas, CHARLES EDWARD JACKSON and HATHMAN N. WHITE, hereinafter called defendants, did fraudulently and knowingly sell and facilitate the sale of approximately 66.3 milligrams of heroin hydrochloride to a special employee of the Bureau of Narcotics, which said heroin hydrochloride had been imported into the United States contrary to law and the defendants knew it to have been imported into the United States contrary to law.

"(A violation of Title 21, United States Code, Section 174)."

■■■ While the indictment could be successfully attacked by post conviction motion if it failed to charge an offense against the laws of the United States, or if the Court lacked jurisdiction of the offense, the rule is different in regard to the other grounds alleged in the motion. Each of those other questions is the type required to be raised on direct appeal rather than a collateral attack. A prisoner cannot use 28 U.S.C.A. § 2255 as a substitute for appeal. Sufficiency of indictment: Gregori v. United States, 5 Cir., 1957, 243 F.2d 47, citing Brassell v. United States, 5 Cir., 1955, 223 F.2d 259, Brant v. United States, 5 Cir., 1955, 218 F.2d 808, Barnes v. United States, 8 Cir., 1952, 197 F.2d 271, Byers v. United States, 10 Cir., 1949, 175 F.2d 654, cert. den. Byers v. Cities Service Gas Co., 339 U.S. 976, 70 S.Ct. 1008, 94 L.Ed. 1381. See also: Stegall v. United States, 6 Cir., 1958, 259 F.2d 83, Gould v. United States, 10 Cir., 1949, 173 F.2d 30, and United States v. Lawrenson, 4 Cir., 1963, 315 F.2d 612. Sufficiency of evidence: Davilman v. United States, 6 Cir., 1950, 180 F.2d 284, Taylor v. United States, 4 Cir., 1949, 177 F.2d 194, Rosselli v. Sanford, 5 Cir., 1946, 155 F.2d

427, cert. den. 329 U.S. 765, 67 S.Ct. 126, 91 L.Ed. 658.

The following statement from Taylor v. United States, supra, at p. 195 of 177 F.2d 194, has been frequently quoted with approval:

"Prisoners adjudged guilty of crime should understand that 28 U. S.C.A. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty. Questions as to the sufficiency of the evidence or involving errors either of law or of fact must be raised by timely appeal from the sentence if the petitioner desires to raise them. Only where the sentence is void or otherwise subject to collateral attack may the attack be made by motion under 28 U.S.C.A. § 2255, which was enacted to take the place of habeas corpus in such cases and was intended to confer no broader right of attack then might have been made in its absence by habeas corpus."

Gregori v. United States., supra, at p. 48 of 243 F.2d, states the rule in regard to collateral attack based on defective indictment to be:

"* * * A *fortiori*, on a collateral attack under 28 U.S.C.A. § 2255 exceptional circumstances must be shown for the vacation of a sentence on the basis of a defective indictment, e. g., if it be shown that the indictment does not allege an offense under any reasonable construction."

Byers v. U. S., supra, gives the same test at p. 656 of 175 F.2d:

"The test of the sufficiency of the indictment on a motion to vacate a sentence is whether the indictment by any reasonable construction can be said to charge the offense for which the sentence was imposed. * * *"

■■■ In the state of the record on the trial of the criminal case, the petitioner could not have secured a reversal of his conviction even if he had presented his present complaints about the indict-

ment on his direct appeal. It is not necessary to allege that heroin hydrochloride, or heroin as it is sometimes called, is a narcotic drug, since the fact that it is a derivative of opium makes it a narcotic drug. Naval v. United States, 9 Cir., 1960, 278 F.2d 611. The contention that the indictment failed to allege that the defendant knew that the heroin had been unlawfully imported is refuted by the language of count one above quoted. There is no merit in the complaint about the failure to allege the name of the purchaser or to identify her by any description other than as being a "special employee of the Bureau of Narcotics". No motion for bill of particulars requesting her name was ever filed. She was identified by name during the direct examination of the first Government witness. The defendant did not, at any time during the trial, plead surprise, claim that he was prejudiced, or file any motion for postponement. On the other hand, he testified in his own behalf and admitted that he had known the special employee for several years, that he knew her to be a narcotics addict, and that he delivered the package of heroin in question to her in exchange for $12.00, which he gave to his co-defendant.

While the petitioner's contention that the designation of the purchaser as "a special employee of the Bureau of Narcotics" was a false description merits no further treatment than that given above, if that much, it will be pointed out that the only basis for that complaint is a statement in the petitioner's motion where he purports to quote a letter dated August 22, 1963, from the Acting Commissioner of Narcotics to him saying:

"Referring to your letter of August 11, 1963, to our knowledge Delma Louise Hayes has never been officially engaged as a Federal Employee within the definition of the term in the United States Code."

There is no conflict between such letter and the designation of the purchaser in the indictment. Mr. English, Agent of the Federal Bureau of Narcotics, as the first witness for the Government in the trial of the criminal case, testified:

"Q In what connection did you know Thelma Lewis Hayes?

"A Thelma Hayes was a special employee of the Bureau.

"Q What is a special employee of the Bureau?

"A It is an individual who has knowledge of criminal activities and we employed her to assist the Government in initiating cases against violators."

While a person doing the kind of work described by Mr. English would not be expected to come within the class of workmen "officially engaged as a Federal Employee within the definition of the term in the United States Code", there has never been any claim that the defendant was mislead as a result of the designation of "special employee of the Bureau of Narcotics." This was not the defendant's first felony or narcotic conviction. The use of the term special employee is only an attempt to get away from the less savory designation, "stool pigeon", frequently used by the defense.

█ Davilman v. United States, supra, Taylor v. United States, supra, and Rosselli v. Sanford, supra, answer the petitioner's complaint about the sufficiency of the evidence to show illegal importation of the heroin. Again, however, the petitioner is presenting a question that would not have had any merit even if it had been raised in the trial on its merits. In a prosecution under the Narcotics Import and Export Act, proof of possession by a defendant of a narcotic drug, not satisfactorily explained to the jury, is sufficient to establish importation. 21 U.S.C.A. § 174. Rodella v. United States, 9 Cir., 1960, 286 F.2d 306, 311, holds in regard to this provision of Sec. 174: " * * * This provision that past or present possession is sufficient evidence to authorize conviction unless the defendant explains his possession is exclusively a rule of evidence and procedure, making proof of one fact prima facie evidence to authorize a finding of related facts un-

less rebutted; and thus relieves the government from proving importation. Velasquez v. United States, 10 Cir., 1957, 244 F.2d 416."

▮ The defendant has filed a motion requesting that an attorney be appointed to represent him. While the Court has followed the policy of appointing an attorney to represent petitioners in connection with post conviction motions where there was any semblance of merit involved, there is no reason why the already heavy charity burden of lawyers should be increased by calling upon them to present a motion involving only questions of law obviously having no possible merit. The motion for appointment of an attorney is overruled. United States v. Pruitt, D.C.Tex., 121 F.Supp. 15, affirmed, 5 Cir., 1954, 217 F.2d 648; Jackson v. United States, D.C.Pa.1963, 221 F.Supp. 755.

This motion, like many others attacking the validity of convictions, emphasizes the real need for a lawyer at an earlier stage in these proceedings. It is generally known that most of these motions are prepared by inmates of the penitentiary. It is to be expected that they would drain from prisoners what money they have available; but whether they get paid or not, the federal courts are the victims of a vicious situation where convicts are practicing law. It is a paradox that the administration of our system of justice depends so heavily upon a profession where character and competence are prerequisites to practice, and yet it tolerates a cancer of this kind where criminals with no character or competence are acting as lawyers. The courts lose the safeguards of Rule 11, F.R.Civ.P., making an attorney accountable for filing scandalous pleadings or pleadings not supported by his good faith belief, and of other disciplinary controls. Mr. Justice Clark's dissenting opinion in Douglas v. California, 372 U.S. 353, 357–359, 83 S.Ct. 814, 817, 9 L.Ed.2d 811, 815, says that 96% of this type of post conviction motions which reach the Supreme Court are frivolous. The percentage is even greater in the trial court. These motions are not tempered by the restraint that comes from character, learning or respect for the courts and law and order. The Court of Appeals for the District of Columbia, in Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, at 669–670 (1945), cert. den. 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002, said long before these convict authors had acquired the boldness we now encounter:

" * * * It is well known that the drafting of petitions for habeas corpus has become a game in many penal institutions. Convicts are not subject to the deterrents of prosecution for perjury and contempt of court which affect ordinary litigants. The opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner. * * *

"He may realize that his allegations will not be believed but the relief from monotony offered by a hearing in court is well worth the trouble of writing them down. To allow a prisoner to try the issue of the effectiveness of his counsel under a liberal definition of that phrase is to give every convict the privilege of opening a Pandora's box of accusations which trial courts near large penal institutions would be compelled to hear. * * * "

A layman from another country reading these motions would likely get the idea that the real menace to society in the case was not the criminal who was convicted even of a heinous crime, but the trial judge, the prosecuting attorney, the investigating officer, or even the counsel for the defendant who had labored conscientiously and well for his client, sometimes without pay.

This practice is a real obstacle to the reformation of criminals. There can be no real reform unless it comes from within the man. The first steps are confession of wrong, reconciliation to and acceptance of punishment, and a good faith determination not to do further wrong. Many prisoners leave the courts with the

proper mental attitude after being sentenced, but they change quickly when they are recklessly advised by these convicts practicing law in the penitentiaries that their constitutional rights have been violated and that they had been done wrong, even though there is no foundation for the advice. Prisoners ought to have a means of relief if they are confined under void convictions; but their advice about the validity of their sentences ought to come from someone who has the competence, honor and responsibilities of an officer of the court.

This case is a good example of the fact that a groundless or frivolous motion cannot always be disposed of without time and labor. While the motions and briefs are signed only by the defendant, they are neatly typewritten on legal size paper and are prepared with more skill than is usually found in this type of proceeding. The original motion has 22 pages; the supplemental motion, 11; the brief and argument, 22. Over sixty cases are cited in the motions and the briefs. While the Court felt that the points raised were without merit, each one of the cases cited was examined to make sure. That work and the preparation of this opinion have taken over two days which could well have been devoted to some of the pending meritorious questions seriously affecting the rights of law abiding people who are making an effort to be assets to society.

The evidence in this case and the facts presented at the sentence hearing showed that this petitioner was a definite menace to society. He was an ex-convict with a record of prior narcotics convictions. He was the head of a ring of dope peddlers specializing in heroin and preying primarily on Negroes. His business was large enough that he was making frequent round trips by airplane between Fort Worth and Juarez for his supply of heroin. There have been no narcotics cases filed in the Fort Worth Division of this District since he was convicted and sentenced. He had no respect for the courts when he was convicted, and he has none now. The efficiency of the courts will continue to be seriously impaired as long as desperate men like this are represented only by fellow convicts in preparation of their pleadings for the purpose of instituting post conviction proceedings.

There must be some remedy for this situation where the price that society is paying is measured not only in time and expense consumed in handling these matters, but also in the general resulting decrease of respect for the courts among the class of people where it is especially needed. Whether it is having lawyers stationed at the penal institutions under a public defender set-up or some other plan to advise about and prepare these pleadings can be determined only after a thorough study. But, somehow, the courts must have the reliability in these cases that is implied and follows from the signature of a responsible lawyer on the pleadings.

The Court is of the opinion that indictment is not unconstitutional, illegal and void, "potently" or otherwise, and that the other grounds in the motion are not well-founded. Judgment denying the relief prayed for will be entered.