Charles Edward JACKSON

v.

UNITED STATES of America.
Civ. A. No. 4–385.

United States District Court
N. D. Texas,
Fort Worth Division.

Aug. 17, 1966.

William Callaway, U. S. Asst. Dist. Atty., Fort Worth, Tex., for the Government.

Wallace Craig, Fort Worth, Tex., for Jackson.

## OPINION

BREWSTER, District Judge.

The petitioner's motion under 28 U.S. C.A. § 2255, seeking to vacate his conviction and sentence in this Court for sale of heroin in violation of 21 U.S.C.A. § 174, alleges two grounds: (1) The government knowingly used perjured testimony. (2) The petitioner's co-defendant, Hathman White, was permitted to plead guilty in the presence of the jury that tried petitioner.

The conviction was affirmed in Jackson v. United States, 5 Cir., 311 F.2d 686 (1963). A judgment denying petitioner's first Section 2255 motion to vacate, Jackson v. United States, D.C.Tex., 225 F. Supp. 53 (1964), was also affirmed. Jackson v. United States, 5 Cir., 339 F.2d 210 (1964).

The Court appointed mature, able and experienced counsel to represent the pe-

titioner in this proceeding. A pre-trial hearing and two evidentiary hearings, all without the petitioner being present, have been held. The Court has reached the conclusion that it is not necessary to bring the petitioner back for a further hearing, and that his present motion should be denied for the reason that it conclusively appears from the hearings already held that he could not be entitled to any relief.

■ The claim that White pleaded guilty in the presence of the jury that tried petitioner is not supported by the record. He and petitioner were jointly charged in one count of the four count indictment, and were put to trial jointly.

A jury was selected and each one pleaded not guilty.[1] Court was then recessed for the day. On the next morning, before any further proceedings in the presence of the jury were had, counsel for White and the government informed the Court that White was going to change his plea to guilty on Count 3. The plea was thereupon taken, and the case against petitioner then proceeded to trial. All matters connected with White's plea of guilty occurred out of the presence and hearing of the jury, and the jury had no knowledge of the plea until counsel for the petitioner cross-examined White about it when he testified as a witness for the government.[2] These facts appearing

1. The transcript of the proceedings of May 1, 1962, shows that the following transpired near the end of that day:
   "(JURY SELECTED, IMPANELED AND SWORN; NO OBJECTIONS THERETO)
   "THE COURT: All right, arraign the defendant Hathman White. As I understand it, the defendant Charles Edward Jackson has already been arraigned?
   "MR. GRIGGS: Yes, sir.
   "THE COURT: And pleaded not guilty?
   "All right, stand up.
   "(INDICTMENT READ)
   "THE COURT: You have heard the United States Attorney read the indictment. Do you plead guilty or not guilty?
   "MR. WHITE: Not guilty.
   "THE COURT: All right, you may be seated.
   "Read the indictment to the jury as to both defendants.
   "(INDICTMENT READ)
   "THE COURT: All right, the defendant Jackson. How do you plead to Counts 1 and 2?
   "MR. JACKSON: Not guilty.
   "THE COURT: All right, Hathman White, do you plead guilty or not guilty to Counts 1, 3 and 4?
   "MR. WHITE: Not guilty.
   "THE COURT: All right, you may be seated."

2. There was no mention of White's plea of guilty on direct examination by the government. The following cross-examination by counsel for the defendant was the first knowledge the jury had of his plea?
   "Q You pleaded guilty to selling this narcotics in this very case this morning, didn't you?

   "A That is true, that is true.
   "Q And you pleaded guilty because you were guilty of selling it?
   "A That is true, that is true.
   "Q And that was because you sold it, isn't that correct?
   "A Because I sold it?
   "Q Yes.
   "A I am guilty on the indictment. I made a sale on the indictment true."
   *      *      *      *      *
   "Q But you have pleaded guilty here this morning to an indictment in which you are charged with selling this heroin on the 14th of November?
   "A That's right, that's right.
   "Q And you pleaded guilty because that was a fact?
   "A That was true."
   Counsel for the defendant further emphasized the plea on re-cross examination:
   "Q At the time you entered the plea of guilty this morning on the sale it is alleged to have occurred on November 14th—did you at that time know that the government was going to dismiss the charges with reference to the sale on November 11th?
   "A I didn't know anything the government was going to do.
   "Q You don't know that was going to happen?
   "A No.
   "Q Nobody said anything at all to you about it?
   "A No, sir.
   "Q About the government dismissing the first two charges in exchange for your pleading guilty on the third charge?
   "A No.
   "Q Weren't you here in the courtroom when that announcement was made

from the files and records conclusively show that this claim presents no ground for setting aside the petitioner's conviction for each of the following reasons:

█ █ (1) Even if petitioner's allegations were true, this is a matter that happened during the trial and should have been complained of on the original appeal. Smith v. United States, 5 Cir., 265 F.2d 14, 16 (1959); United States v. Walker, 2 Cir., 197 F.2d 287 (1952); Warren v. United States, 8 Cir., 311 F.2d 673 (1963). The following is quoted from the *Warren* case, at p. 676: " ' * * * It is likewise settled law that errors occurring in a criminal proceeding which can be made the subject of review upon direct appeal from a conviction and sentence cannot be used as the premise for a collateral attack thereon under a Section 2255 petition (Callanan v. United States, 274 F.2d 601, 8 Cir. 1960) and this is so as to "errors committed in the course of a trial even though such errors relate to constitutional rights." United States v. Haywood, 208 F.2d 156, 159 (7 Cir. 1953).' "

█ (2) Even if the point could properly be raised in a post-conviction proceeding, there would be no merit in it because:

(a) The petitioner made no request that the jury selected to try him and White be discharged. Plea was joined before the jury the previous afternoon; and the Court had no authority to discharge the jury under the existing circumstances except upon request of the petitioner. If the Court had declared a mistrial on his own motion, petitioner would have been put in position to raise a serious question of former jeopardy. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

(b) The petitioner, himself, brought to the jury the first knowledge it had of White's plea of guilty. As far as the jury knew, up to the time of the petitioner's cross-examination of White about the plea, White might have been granted a continuance or a severance. The petitioner wanted it before the jury that White had pleaded guilty, as the main argument he had for attacking White's credibility was that White was facing a sure sentence on his plea of guilty and was seeking leniency by testifying as a witness for the government. There was never any intention on the part of petitioner to conceal White's actual guilt from the jury. His own testimony on the trial was that he was acting only as an agent for White in making the delivery of the heroin on the occasion in question.[3] The fact that White pleaded guilty added little or nothing to the blame that petitioner's own testimony before the jury put on him. The petitioner's motion in the present case, his affidavit attached thereto, and his letters attached to other pleadings filed by him in this proceeding, all show that it is still his claim that White was guilty of possessing and selling heroin on the occasions alleged in the indictment.

Under these circumstances, Rogers v. United States, 5 Cir., 304 F.2d

---

that they were going to dismiss Count I and II.

"THE COURT: II is just Charles Edward Jackson.

"Q Count I and IV, I am sorry, thank you. I and IV.

"A I heard it this morning but not before then.

"Q You heard it this morning. So at the time you actually entered your plea you had that information?

"A I had told them before that I was not going to fight the case, at the preliminary hearing when Judge Dooley was here. I said that then.

"Q Were you brought into court yesterday and had these charges read to you in the presence of the jury that you are now testifying about?

"A I do.

"Q And at that time did you stand up here and tell this Court and that jury that you pleaded not guilty on all charges?

"A That is true.

"Q Today you came back and tell them you are guilty on Count No. III, which is the November 14th count?

"A Uh, huh."

3. The summary of the facts in Judge Brown's opinion on the appeal from the trial on the merits shows that the petitioner was trying to lay the entire blame, as he saw it, on White.

520 (1952), and the other cases cited by the petitioner in support of this point would have no application here, even if this matter could be properly raised in a post-conviction motion.

The other ground of the motion is that the prosecution knowingly used perjured testimony against the petitioner in his criminal trial. A conviction obtained by the government's knowing use of perjured testimony is void because it is in violation of due process of law under the federal constitution. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406 (1935); Pyle v. State of Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942); Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed. 2d 9 (1957); Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L. Ed.2d 1217 (1959); Enzor v. United States, 5 Cir., 296 F.2d 62 (1961), cert. den. 369 U.S. 854, 82 S.Ct. 940, 8 L.Ed.2d 12; United States v. Spadafora, 7 Cir., 200 F.2d 140, 142 (1952); United States v. Schultz, 7 Cir., 286 F.2d 753, 755 (1961); Lauer v. United States, 7 Cir., 320 F.2d 187 (1963); United States v. Gonzalez, D.C.N.Y., 33 F.R.D. 280, affirmed, 2 Cir., 321 F.2d 638 (1963); United States v. Abbinanti, 2 Cir., 338 F. 2d 331 (1964); Estes v. United States, D.C.Tex., 254 F.Supp. 314 (1966).

The Court is of the opinion that it conclusively appears from the files and records and from the matters developed at the hearings held on the present motion that petitioner's second ground should be rejected because: (1) The alleged false testimony could not possibly have contributed to the conviction. (2) The petitioner has no proof that the government had knowledge of any perjured testimony. The following quotations taken from the cases above cited show that either one of these reasons is adequate basis for denial of a motion of this kind.

*Spadafora*, 200 F.2d at p. 143: "In order to obtain a hearing under Sec. 2255, a petitioner must make a more substantial showing than merely charging perjury and making the unsupported claim that perjured testimony was know-

ingly used by the prosecuting authorities. *Nor does he meet the burden upon him by pointing out trivial inconsistencies or conflicts in the evidence.*" (Emphasis added.)

*Enzor*, 296 F.2d at p. 63: " * * * The use by the government knowingly of perjured testimony in order to obtain a conviction would, if proved, be ground under Section 2255, supra, for vacation of conviction. However, a defendant has the burden of not only showing that *material* perjured testimony was used to convict him, but that *it was knowingly and intentionally used by the prosecuting authorities for such purpose.* United States v. Spadafora, 200 F.2d 140, 142 (7 Cir., 1952). *The differences in the testimony relied on by the Appellant here are no more than immaterial inconsistencies and do not begin to meet this test.* * * * " (Emphasis added.)

*Lauer*, 320 F.2d at p. 188: " * * * Appellant points to conflicts in trial testimony relating to the circumstances under which, and at whose request, an informerwitness was released from an Indiana county jail, where he was in custody on a narcotics charge, and used to secure evidence against appellant. But the existence of such conflicts or inconsistencies does not of itself support a conclusion of perjury much less the knowing use of perjured testimony. * * * "

*Abbinanti*, 338 F.2d at p. 332: " * * Abbinanti claims that Moreton gave perjurious testimony as to the time when Moreton first met Abbinanti and when Moreton first dealt in narcotics. *Even if Moreton was mistaken as to these matters, they have no direct bearing on whether Abbinanti purchased, possessed and sold narcotics himself for the period of time commencing in May, 1959.*" (Emphasis added.)

*Gonzalez*, opinion by Judge Kaufman, 33 F.R.D., at p. 282: "While knowing use of perjured testimony by the government to convict a defendant is a ground for relief under 28 U.S.C., § 2255, see, e. g. United States v. Sobell, 142 F.Supp. 515 (S.D.N.Y.1956), aff'd 244 F.2d 520 (C.A. 2, 1957), cert. denied, 355 U.S. 873, 78

S.Ct. 120, 2 L.Ed.2d 77 (1957), *such perjury is not a ground for relief if it does not contribute to the conviction."* (Emphasis added.)

*Estes,* 254 F.Supp. at p. 318: " * * * The essential elements of an action to set aside a conviction on this theory are, first, that *material* perjured testimony was actually given, and, second, that *the prosecution either knowingly used it or allowed it to go uncorrected * * *"* (Emphasis added.)

█ Petitioner claims that White was guilty of perjury in two particulars: first, in his testimony that at the time he entered his plea of guilty to Count 3, he did not know that the government was going to dismiss the other two counts against him; and second, in his testimony that the heroin involved in the transaction that gave rise to Counts 1 and 2 belonged to petitioner, when it actually belonged to White and Shelton. The testimony embraced in the first claim is no worse than that complained of in Lauer and Abbinanti, both supra, and is plainly trivial.[4] The petitioner's own testimony in the criminal trial admitting knowing participation in the sale of the heroin renders the issue of the actual ownership of the heroin raised by his second claim, as well as the conflict referred to in his first claim, immaterial.

The petitioner was convicted on Count 1, which charged that on or about No-vember 11, 1961, he and Hathman White sold the heroin in question to a special employee of the Bureau of Narcotics, knowing it to have been imported into the United States contrary to law, in violation of 21 U.S.C.A., § 174. Both White and petitioner gave testimony about the sale transaction. Petitioner evidently recognized that the evidence was so stacked against him[5] that he could not get away with a denial of participation in the transaction, so he defended on the ground that he actually made the sale as an agent for White, claiming that he thereby had an affirmative defense under Adams v. United States, 5 Cir., 220 F.2d 297 (1955), and Henderson v. United States, 5 Cir., 261 F.2d 909 (1959). He gave the following testimony:

"Q  On or about November 11, 1961, tell us whether or not you delivered a quantity of narcotics to one Thelma Hayes?

"A  Yes, I did.

*  *  *  *  *  *

"Q  Was that your only connection with this package, when he gave it to you and asked you to deliver it to her?

"A  Yes, sir.

"Q  Now you did know what it was?

"A  Yes, sir."

In rejecting his claim that mere agency was a defense, the Court of Appeals said

The real benefit the petitioner could expect from the government's leniency towards White was that the jury might believe that it affected his testimony. Under either version as to when White first learned what the government was going to do, it was clear to the jury that White knew of such leniency before he took the stand in petitioner's trial. Whether he first learned of the government's plans for such leniency on April 16th or May 2nd could not have made any difference in the jury's consideration of the influence it may have had on this testimony.

4.  The first claim of perjury is based on the portion of the testimony given by White on re-cross examination quoted in footnote 2. The point the petitioner is making is exceedingly fine. It deals with the time when White learned of the government's intention to dismiss all the charges against him except the one in Count 3, if he pleaded guilty to that one. The effect of White's testimony is that he did not know what the government's intentions were until he learned of them during the proceedings on the morning of May 2, 1962, when he actually pleaded guilty to Count 3 and the government definitely announced that it was dismissing all other charges against him. The petitioner claims that such testimony was false because White learned the government's plans when he was first called for arraignment on April 16, 1962.

5.  The opinion of the Court of Appeals noticed that the evidence "was so heavily stacked against him". 311 F.2d at p. 688.

at p. 690 on the appeal from the trial on the merits:

"Defendant also asserts that on the basis of a number of cases, he was a mere agent and cannot therefore be held guilty. But this misapprehends the whole idea of those decisions. As we pointed out in Coronado v. United States, 5 Cir., 1959, 266 F.2d 719, the question is 'whether the accused acted as a participant in the sale on behalf of the buyer or on behalf of the seller.' No case has yet held the agent of the seller excused by the act of a knowing delivery."

Since the petitioner was guilty under the version presented by his own testimony, his motion lacks validity because the jury had no honest choice except to convict him, regardless of the correctness of White's testimony in the particulars here involved.

There is no intention to intimate that the Court is of the opinion that there is any substance to petitioner's claims that White perjured himself. The claim over the actual ownership of the dope was before the jury in a swearing match between White and petitioner. The only testimony petitioner suggests he might get to bolster his own is that of Denzel Lee and John Shelton, both fellow dope peddlers who are in the penitentiary with petitioner. There is little likelihood that he could ever get the testimony of either of them, because they would have to incriminate themselves in order to give the proposed testimony about their knowledge of the inner workings of the dope ring in which they were involved with White and petitioner.[6] He wants the Court to issue a subpoena for Shelton

"as a hostile witness and force him to testify in the interest of justice."[7]

While it is felt that no findings can now be made as to the existence of perjury in connection with the ownership of the dope, without hearing petitioner's evidence thereon, the situation is different as to the other claim. The petitioner asserted that he needed the transcript of the proceedings of April 16, 1962, or the testimony of Judge Dooley, or his court reporter to show what happened in connection with White that day. That transcript was furnished his counsel, and it was offered in evidence on the hearing of this motion. Petitioner does not take the position that he himself could offer testimony in that connection. If he did, he would be confronted with the rule that he waived the point by not presenting facts of which he had knowledge at the time of the trial. Elliott v. United States, 8 Cir., 268 F.2d 135 (1959); United States v. Smith, 2 Cir., 306 F.2d 457 (1962); United States v. Abbinanti, 2 Cir., 338 F.2d 331 (1964). With the full evidence on the first claim before it, the Court can determine whether White was actually guilty of perjury as claimed by petitioner.

As the Court viewed it on the trial and as it now appears from the files and records of this case, there was no perjury in White's testimony on re-cross examination that he did not know what the government was going to do about him until the proceedings on the morning of May 2nd when he actually plead guilty to Count 3. From his viewpoint as a layman, he had adequate justification for saying that he did not know

---

6. Petitioner's letter dated November 7, 1965, attached to his motion for necessary process for production of Lee and Shelton as witnesses says that Lee would testify:
"That he is acquainted with Hathman N. White; that on November 10, 1961, John Shelton and Hathman White met him in Corsicana, Texas, and he delivered a quantity of heroin to them; that he is aware that both White and Shelton sold and peddled heroin to the Fort Worth addicts; that he is aware

that White peddled heroin for Shelton; and, that the quantity of heroin he delivered to Shelton and White would sustain their sales for approximately four or five days."
The letter further says that Shelton was a participant in the same transactions as Lee and could therefore testify to the same matters.

7. Quotation is from petitioner's letter mentioned in preceding footnote.

what was going to happen to him until that time. The transcript of the proceedings of April 16, 1962 shows that he was first called for arraignment on these charges on that date before Judge Dooley, with Assistant United States Attorney Hughes representing the government. Mr. Hughes stated that the government would arraign him on Counts 3 and 4. The proceedings were halted abruptly and the arraignment was postponed for appointment of a lawyer when White indicated he did not want to waive counsel. White's next appearance in court is recorded in the transcript of the proceedings of May 1 and 2, 1962, when this case was called for trial against White and petitioner jointly. Judge Dooley and Mr. Hughes were not there. He was appearing before another judge and facing a different prosecutor. White's court-appointed counsel informed the Court out of the hearing of the jury that White's family had talked to a lawyer in Dallas about representing White, but that the lawyer could not get to Fort Worth for the trial until the next day. After considerable discussion, it was agreed that a jury would be selected, and that there would then be an adjournment until the next morning to enable the Dallas lawyer to be present during the trial. During the course of that discussion, court-appointed counsel mentioned that he understood that White might plead guilty and that if he did so, the government would dismiss Count 1 as to White. When the jury was impanelled, both petitioner and White pleaded not guilty to all charges against them. On the following morning, White's Dallas lawyer informed the Court in the absence of the jury that White wanted to change his plea to Count 3, and Mr. Ward then said that the government planned to dismiss all charges against White except the one in Count 3. White thereupon pleaded guilty to that count. With the tide ebbing and flowing from proposed arraignment on two counts, to actual arraignment and plea of not guilty on all counts, to plea of guilty on only one count and dismissal of all other charges, with changes in personnel on the bench and in both government and defense counsel during the course of the proceedings, the Court is of the opinion that White's challenged testimony lacked the element of intentional falsity necessary to make it perjury. United States v. Rosenberg, 2 Cir., 200 F.2d 666, 671 (1952).

■ The second reason why the portion of the motion based on perjured testimony should be overruled is that there is no proof available to show that the prosecution had knowledge of the perjured nature of such testimony. This reason is based upon the files and records and the evidence in the hearings on this motion and on the frank statement of counsel for petitioner after thorough investigation.

Arrangements were made for court-appointed counsel to go to the penitentiary at Leavenworth to interview petitioner and such witnesses as petitioner might there suggest, and to another penitentiary to interview Hathman White. He also interviewed the government officials connected with the original prosecution, and was furnished with the transcripts of all prior proceedings. Petitioner's deposition was taken on oral interrogatories, and his knowledge of all matters relating to the issues was fully developed in answer to questions by counsel for each side.

A pre-trial hearing was held and an order was entered setting the case for trial. That order, after relating the necessary facts, stated: "Under all the circumstances, the Court feels that he should begin the hearing to determine if there is any possible necessity of having the petitioner and Lee present. If there is such a necessity, the hearing can then be recessed until they are brought here. If such a contingency occurs, and if it is necessary in order to do justice, the entire hearing can be begun over with the petitioner and his witness Denzel Lee present."

When the hearing was held and all of the then available evidence was offered, counsel for petitioner asked for and was granted additional time to make a fur-

ther investigation to see if he could discover any evidence of knowledge on the part of the government. The trial was resumed when such counsel advised the Court that he thought he had investigated all possible sources. At the conclusion of the trial, there was nothing in the record of the entire proceedings, including the petitioner's own deposition, his pleadings and his affidavits and his several unsworn statements attached thereto, that even remotely suggested that the government knowingly used perjured testimony against the defendant or knowingly permitted it to stand uncorrected. Counsel for petitioner, in answer to questions by the Court, frankly admitted that he had been unable to discover any proof of such conduct on the part of the prosecution. The Court had confidence in counsel, and is of the opinion that his statement is fully supported by the files and records of all the proceedings in this case, including the evidence in the present hearing. Under circumstances where much less effort was expended to determine the validity of a petitioner's claim, the Court, in Johnson v. United States, 5 Cir., 339 F.2d 29 (1964), said in upholding the action of the trial court similar to that here:

> "The appellant challenges the denial of his motion made pursuant to Title 28 U.S.C.A., § 2255. In considering the motion, the court appointed competent counsel to represent the appellant and held a pretrial conference. Thereafter, appointed counsel and the court made an investigation of the files and records. Counsel advised the court that it was his considered opinion, after thorough investigation, that an evidentiary hearing on the motion would serve no useful purpose. Based upon recommendations of counsel and its own examination of such files and records, the trial court concluded that there was no merit in the contentions of the appellant. We agree with the conclusions reached."

The type of candor on the part of court-appointed counsel shown in this case and in the Johnson case, supra, is to be commended. It has always been expected, and in effect demanded, of employed counsel in criminal and civil cases. Unwarranted charges of ineffective representation made in the comparatively recent flurry of frivolous post-conviction motions by ungrateful convicts against their court-appointed lawyers created considerable concern for a while among members of the legal profession as to what was expected of them when they were appointed to represent persons charged with crime. The sometimes solicitous and tender consideration by the courts of even the plainly baseless attacks on the very integrity of reputable court-appointed counsel added to that concern. Recent cases have settled this problem *in favor of the continued determination of legal professional standards by honorable people, rather than by criminals who have no respect for the law, for the rights of other people, or even for themselves.* It is now settled that court-appointed counsel owes his client charged with crime no greater duty than that which would be imposed upon conscientious, diligent and honorable employed counsel of the accused's own choosing under the same circumstances.[8] That means that all counsel for the defendants in criminal cases, whether employed or court-appointed, should be guided by the standard, "all fair and honorable means", laid down by Canon 5, American Bar Association Canons of Professional Ethics, in discharging the duty imposed by that Canon "to present every defense that the law of the land

8. Williams v. Beto, 5 Cir., 354 F.2d 698 (1965); Hoard v. Dutton, 5 Cir., 360 F. 2d 673 (1966); Wood v. United States, 10 Cir., 357 F.2d 425 (1966); Stanmore v. People, Colo., 401 P.2d 829 (1965); Morales v. State, 75 N.M. 468, 406 P.2d 177 (1965). The following quotation is taken from *Williams*, 354 F.2d at p. 705:

"This is a good time to make it plain, however, that when a defendant requests the appointment of counsel he is simply seeking the benefits of the attorney-client relationship as customarily practiced in the American system of jurisprudence, no more and no less."

permits, to the end that no person may be deprived of life or liberty, but by due process of law." He is never under a duty to commit a crime or a dishonest act to free his client. While a lawyer's professional duty requires him to give his client loyal and diligent representation, it also requires him to be honest with the court and to conform his conduct to recognized legal ethics.[9] If the defendant does not agree with his counsel, he has a right to present his own contentions; but the sovereign is under no duty to search for counsel until it finds one who will agree with him.[10] The lawyer, not the accused, should be in charge of the defense.[11] The candid statement of a reputable, competent, court-appointed lawyer, based upon conscientious and diligent investigation, should be treated with the same respect as that of counsel of like integrity chosen and employed by the accused.[12]

The petitioner strenuously insisted on being brought back for the trial. There were times when it appeared that a trip back home was of more importance than taking the time necessary to arrange for his counsel to go to the penal institutions to interview petitioner and possible witnesses and to make other investigation. It is recognized that a petitioner should be present for the trial of fact matters presented in his post-conviction motion, where his presence is essential to the proper presentation of the grounds of his motion. However, in spite of the feeling most convicts have, the motion to vacate provided for in Section 2255 does not imply a vacation in the holiday sense. Security hazards,[13] administrative burdens,[14] the disruption of prison discipline and substantial expense involved in transporting convicts back and forth,[15] have enjoined upon the trial court the responsibility of determining that the petitioner's presence might be necessary for a fair and just presentation of a substantial claim. In this connection, the Supreme Court in Sanders v. United States, 373 U.S. 1, 20, 83 S.Ct. 1068, 1080, 10 L.Ed.2d 148, 164 (1963), said:

"On remand, a hearing will be required. This is not to say, however, that it will automatically become necessary to produce petitioner at the hearing to enable him to testify. *Not*

9. The following is quoted from cases cited in footnote 8:

*Wood*, 357 F.2d at p. 428, after commenting on duty imposed by Canon 5: " * * * *This does not require an attorney, whether retained or appointed, to stultify himself by advancing arguments known by him to be without merit.*" (Emphasis added).

*Stanmore:* "*To require a lawyer to contend that errors of law occurred when he does not believe they did would be to cause him to pervert the solemn oath which he takes never to attempt to mislead the court.* (Emphasis added).

\* \* \* \* \*

" * * * We refuse to believe, however, that one with money can purchase, and we use the term advisedly, a lawyer to contend in this Court that certain errors of law exist when his conscience tells him they do not."

10. Stanmore v. People, supra, note 8.

11. *Williams*, supra, note 8, at pp. 705, 706: "When one seeks the assistance of counsel, he thereby confesses his own inadequacy in the field and stipulates his willingness, like any other client, save in the exceptional case we have already discussed, to be bound by the presumably superior knowledge of the professional man on whose assistance he proposes to depend."

\* \* \* \* \*

"If the indigent client, conferred upon and trusted to the lawyer, knows more about what ought to be done in handling the case, then he needs no counsel and it is folly for him to ask for it. * * *"

12. Ellis v. U. S., 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958); Hardy v. U. S., 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); and Stanmore, supra, footnote 8.

13. Machibroda v. United States, 368 U.S. 487, 501, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

14. Sanders v. United States, 373 U.S. 1, 20, 83 S.Ct. 1068, 10 L.Ed.2d 148, 164 (1963); Moore v. United States, 5 Cir., 334 F.2d 25, 27 (1964).

15. United States v. Baker, D.C.Ark., 158 F.Supp. 842, 849 (1958).

*every colorable allegation entitles a federal prisoner to a trip to the sentencing court.* Congress, recognizing the administrative burden involved in the transportation of prisoners to and from a hearing in the sentencing court, provided in § 2255 that the application may be entertained and determined 'without requiring the production of the prisoner at the hearing.' This does not mean that a prisoner can be prevented from testifying in support of a substantial claim where his testimony would be material. However, *we think it clear that the sentencing court has discretion to ascertain whether the claim is substantial before granting a full evidentiary hearing."* (Emphasis added.)

The same principle was recognized in Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473, 479 (1962), where the Court said:

"What has been said is not to imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. *The language of the statute does not strip the district courts of all discretion to exercise their common sense.* Indeed, the statute itself recognizes that *there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner."* (Emphasis added.)

This case is a good illustration of the reason for giving the trial court the discretion mentioned above. The affidavit of petitioner attached to his present motion states that "White was a member of a narcotic ring which was importing the heroin into the United States from Korea; the witness White was obtaining the narcotics from John Shelton, another member of the said narcotic ring, for the purpose of selling to other narcotic addicts; and the witness White was selling heroin for John Shelton." The petitioner's letter of November 7, 1965, attached to his motion for production of Lee and Shelton as witnesses, discloses an association by petitioner with the members of the dope ring of such a nature as only another member of the ring would have. The facts presented in the sentence hearing showed beyond question not only that petitioner was involved in that notorious ring known to the underworld as "The Green Dragon Ring", but that he was one of the leaders of it; that he was head of the ring in the Fort Worth area; that the supply of heroin was coming from Korea and from Mexico on a regular basis; that petitioner made several airplane trips each week between Fort Worth and El Paso to get the heroin that was brought in from Juarez; that their primary victims were Negroes; and that the leaders of the ring were ruthless, vicious criminals. Such a case not only warranted, but required the Court to observe the "need for great care" and to use every "appropriate means for inquiry" to determine if it was necessary in the interest of justice to transport back and forth across the country these desperate and dangerous dope peddlers. That inquiry has been far from cursory. A thorough use of such appropriate means has made the conclusion inescapable that there were several obstacles to petitioner's motion that could not be overcome by him, whether he was present or not. The Court therefore concludes that the petitioner's claim is not substantial, and that it should be denied on the basis of the files and records and the evidence offered at the hearings on his motion without having him brought back for a hearing.

The petitioner has now had three trials in this Court, and he has received more than he was entitled to each time. The opinion on the original appeal points out that the defensive charges were more favorable to him than the record justified.[16] It went on to say: "A careful reading of the record of the trial in-

16. 311 F.2d, at p. 688, footnote 3.

dicated to us that the defendant was given a fair trial and his rights were scrupulously guarded." The opinion on the appeal from denial of the first conviction reiterates that conclusion. The Court would have been justified in refusing the appointment of counsel and in dismissing this present motion on the files and records, based on the fact that the first ground presented only a question of law, and that the second ground was obviously without merit in view of petitioner's own testimony on the main trial. Instead of that, competent counsel was appointed, a thorough investigation was made, petitioner's complete oral deposition was taken, and a pre-trial hearing and an evidentiary hearing on the motion were held. Petitioner has had more than his day in court, and the more time that has been spent on this case, the more convincing it becomes that he is guilty of the offense charged and that he has been more than fairly handled.

An order will be entered denying petitioner's motion.

This opinion will serve as findings of fact and conclusions of law.